825 A.2d 1224 (2001)
361 N.J. Super. 502
The STATE of New Jersey,
v.
James L. MAXWELL, Defendant
Superior Court of New Jersey, Law Division.
Decided March 28, 2001.
*1226 Ronald S. Fava, Passaic County Prosecutor, attorney for plaintiff (Chief Assistant Prosecutor Joseph A. Del Russo.
Edward A. Jerejian, for defendant (Jerejian and Jerejian, Orange, Attorneys).
*1225 CLARK, P.J.Cr.
The defendant, James L. Maxwell, age 50, is charged in indictment XX-XX-XXXX I with one count of aggravated sexual assault, one count of attempted aggravated sexual assault and twelve counts of endangering the welfare of a child by engaging in sexual conduct.
The State alleges that Mr. Maxwell made telephone calls between Autumn of 1998 and Autumn of 1999 to a total of eleven girls, ranging in age from 8 to 14. None of these girls had previously known Mr. Maxwell. In the case of one victim, S.M., then age 10, the State alleges that Mr. Maxwell called her in June, 1999 and claimed to be Dr. Mitchell, her mother's gynecologist. He told her that her mother had asked him to call her because she was concerned about S.M. scratching her vagina at night. Mr. Maxwell asked if she was experiencing any discharge and, when the child said no, he asked her to insert her finger into her vagina and then to smell and taste her finger and describe it to him. The child complied with the instructions. This event is the basis for count one, aggravated sexual assault, N.J.S.A. 2C:14-2a(1), and count three, endangering the welfare of a child by engaging in sexual conduct, N.J.S.A. 2C:24-4a.
The State further alleges that in a subsequent telephone call to S.M. in September, 1999, Mr. Maxwell told her that it had taken a long time for him to find out where she lived. He stated that he had taped the first phone call and that if she did not do the same things again, he would take the tape to her school and play it for all of her friends. The child screamed and hung up the telephone. She immediately told her mother what had occurred and her mother dialed * 57 to trace the call. This call is the basis for count two, attempted aggravated sexual assault, N.J.S.A. 2C:5-1/2C:14-2a(1), and count four, endangering the welfare of a child by engaging in sexual conduct. N.J.S.A. 2C:24-4a.
In the remaining counts, five through fourteen, the State alleges that Mr. Maxwell called the other young girls, and, in some of the calls, identified himself as a doctor. In all of the calls, he engaged in sexually explicit conversations with them and spoke of his desire to perform sexual acts upon them and/or have them perform sexual acts upon him. All of these counts allege endangering the welfare of a child by engaging in sexual conduct. N.J.S.A. 2C:24-4a.
The Prosecutor alleges that the police investigation of the traced telephone call led to Mr. Maxwell who lived in a house in North Haledon with his brother, a developmentally disabled adult. The police obtained a search warrant for his home. Numerous items were seized and include tape recordings of S.M.'s telephone conversations with him; a video camera situated on a tripod which was positioned to face out a window; videos of young girls playing in their yards; homemade tapes of Mr. Maxwell engaging in sexual acts with himself; homemade child pornography with pictures of children's faces superimposed on the bodies of naked adult women; and newspaper clippings containing pictures of local young girls, including some of the victims, and accounts of their school, sports or other activities. The police also *1227 seized several handguns, ammunition, rifles and a shotgun.
Mr. Maxwell was arrested and gave a typewritten statement to the police. While not yet scrutinized in a Miranda[1] hearing, this statement, marked S-1 in evidence at the grand jury presentation, contains on its face detailed admissions to the acts alleged by the victims.
Defendant has filed motions to dismiss counts one and two, aggravated sexual assault and attempted aggravated sexual assault upon S.M. He has alleged that the definition of "sexual penetration" under N.J.S.A. 2C:14-1c is unconstitutionally vague, both on its face and as applied to him. He has also moved to dismiss counts three through fourteen, again alleging vagueness and further arguing insufficiency of evidence to sustain the commission of "sexual conduct." The Defendant has also moved to suppress the evidence retrieved during the execution of the search warrant and has argued that the search warrant was unconstitutionally broad. In the alternative, he requests that he be permitted to challenge the admissibility at trial of particular items that were seized.

The Constitutionality of the Statute
N.J.S.A. 2C:14-2a(1), aggravated sexual assault, prohibits an act of "sexual penetration" with a victim who is less than 13 years old. N.J.S.A. 2C:14-1c defines sexual penetration as "vaginal intercourse, cunnilingus, fellatio or anal intercourse between persons or insertion of the hand, finger or object into the anus or vagina either by the actor or upon the actor's instruction. The depth of insertion shall not be relevant as to the question of the commission of the crime."
Defendant has argued that the statute is unconstitutionally vague because it fails to adequately warn a potential actor that instructing a victim to penetrate herself[2] would subject him to criminal liability. He further asserts that such language fails to provide law enforcement with clear guidelines so as to avoid arbitrary and inconsistent enforcement of the statute.
Defendant further argues that the word "instruction" is subject to different interpretations. He notes that the Random House Dictionary (1987 ed.) defines "instruction" as "to furnish with orders," "to furnish with information," "the act of furnishing with authoritative directions." He asserts that, under these circumstances, the phrase "upon the actor's instruction" could reasonably be construed as limited to involving a verbal command from an authority figure such as a parent, teacher, doctor or employer or, in the alternative, as applying to a communication by one actor to another in a multiple defendant sexual assault.
Finally, Defendant alleges that the statute as applied to him is unconstitutionally vague because if it were meant to include acts of the victim upon herself following an actor's instruction, then it is reasonable to conclude that the Legislature intended that the acts occur in the physical presence of the actor.
The Prosecutor has argued that a reasonable reading and interpretation of this statute clearly prohibits sexual penetration of the underage victim, either by the actor himself or by the victim herself upon the actor's instruction. He further states that the Webster Collegiate Dictionary (10th Ed.1996) defines "instruction" as "to give an order or command to" and notes that *1228 there are many scenarios where instructions are transmitted, often by telephone, between persons who are not in mutual physical presence or proximity to each other.
This Court's research has not revealed any prior recorded legislative history in which the phrase "upon the actor's instruction" was discussed nor any prior reported New Jersey decision in which the interpretation of this phrase was actually litigated. It is noted, however, that this theory of criminal liability was clearly present and never challenged as a basis of criminal liability by any of the defendants nor raised sua sponte by the trial court or the Appellate Division in State v. Scherzer, 301 N.J.Super. 363, 694 A.2d 196 (App.Div. 1997).
In Scherzer, supra, it was alleged that several actors had committed aggravated sexual assault and sexual assault upon M.G., a mentally defective 17 year old girl. The defendants invited M.G. to the basement of the Scherzer house and, with several other teen-age boys present, sexually assaulted her and urged her to sexually penetrate herself with her fingers. The court observed that:
M.G. said that when some of the boys asked her to, she took off her sweat pants and T-shirt. Thereafter, at the urging of the boys, sexual activity occurred beginning with M.G. inserting her fingers in her vagina, her masturbating and performing fellatio on five of the young men, permitting Kevin to insert a broomstick and Christopher to insert the handle of a baseball bat into her vagina. She said she permitted Corcoran to put a small stick in her vagina. Four of the boys also sucked on her breasts. Before she left, some of the boys told her "not to tell anybody" or they would tell her mother and she would "get in trouble." Id. at 393, 694 A.2d 196.
The court further noted that:
M.G. also testified that various boys told her to take her clothes off, to insert her fingers into her vagina, and go "further, further, further." Another boy testified that he believed Archer had told M.G. to take her clothes off. According to M.G., when the sexual activity was over, the boys stood in a circle and put their hands together in the center. They told M.G. not to tell anybody about what happened or they would tell her mother what she did. [Id. at 402, 694 A.2d 196.]
In rejecting the defendants' argument that the trial judge should have charged the jury that they must be unanimous as to at least one of the several theories of sexual penetration alleged, the Scherzer court observed that the jury had been instructed:
if you find from any of the evidence that any defendant or his accomplice caused (M.G.)to perform fellatio on someone or if you find any defendant or his accomplice inserted a bat or broom or a stick into (M.G.)'s vagina or if you find that any defendant or his accomplice caused (M.G.) to insert her own fingers into her vagina, that constitutes sexual penetration. (emphasis added) [Id. at 479, 694 A.2d 196.]
The Scherzer court then noted that the defendants had not requested a specific unanimity instruction and concluded that the acts of penetration alleged were conceptually similar and did not require this charge. Hence, while not specifically raised as an issue, the Appellate Division approved the trial court's legal instruction which permitted the jury to find guilt upon the theory that the victim had penetrated herself "upon the actor's instruction."
In State in the Interest of M.T.S., 129 N.J. 422, 609 A.2d 1266 (1992), our Supreme Court reviewed the legislative history *1229 of N.J.S.A. 2C:14-1-7, the Sexual Offenses Statute. The Court noted that our Legislature did not adopt the Model Penal Code definitions of sexual assault when enacting the Code of Criminal Justice in 1979. The Court stated that "the Model Sex Offense Statute in turn had been based on selected provisions of the Michigan Criminal Sexual Conduct Statute, Mich. Stat. Ann. Section 28.788(4)(b) (Callaghan 1990.), (M.C.L.A. Section 750.520d) and on reform statutes in New Mexico, Minnesota and Wisconsin. Bienen, Rape III, supra, 6 Women's Rts. L. Rep. at 207." Id. at 440, 609 A.2d 1266.
Although M.T.S. did not involve discussion of the term "upon the actor's instruction," it did relate in detail the departure of the Code of Criminal Justice from the Model Penal Code definitions of sexual misconduct. As the Court observed:
Since the 1978 reform, the Code has referred to the crime that was once known as "rape" as "sexual assault." The crime now requires "penetration," not "sexual intercourse." It requires "force" or "coercion," not "submission" or "resistance." It makes no reference to the victim's state of mind or attitude, or conduct in response to the assault. It eliminates the spousal exception based on implied consent. It emphasizes the assaultive character of the offense by defining sexual penetration to encompass a wide range of sexual contacts, going well beyond traditional "carnal knowledge."2 Consistent with the assaultive character, as opposed to the traditional sexual character, of the offense, the statute also renders the crime gender-neutral: both males and females can be actors or victims. [Id. at 440-441, 609 A.2d 1266.]
In footnote 2, following the Court's reference to "carnal knowledge", the Court said the following:
(t)his reform replaced the concept of carnal abuse, which was limited to vaginal intercourse, with specific kinds of sexual acts contained in a broad definition of penetration: Sexual penetration means vaginal intercourse, cunnilingus, fellatio or anal intercourse between persons or insertion of the hand, finger or object into the anus or vagina either by the actor or upon the actor's instruction. (N.J.S.A. 2C:14-1) [Id. at 440, FN 2, 609 A.2d 1266]
This court's review of the sex crimes statutes in Michigan, New Mexico, Minnesota and Wisconsin reveals that, as of September 1, 1979, the effective date of the New Jersey Code of Criminal Justice, none had any language similar to "upon the actor's instruction." As of that date, Wisconsin Statute § 939.22(36) defined "sexual intercourse" as "requires only vulvar penetration and does not require emission." Section 940.225(5)(a) further defined "sexual intercourse" as "includes the meaning assigned under s. 939.22(36) as well as cunnilingus, fellatio, anal intercourse or any other intrusion, however slight, of any part of a person's body or any other object into the genital or anal opening of another, but emission of semen is not required."
In 1981, the Wisconsin Legislature approved a change in the definition of "sexual intercourse" which became effective on May 1, 1982. The amended definition, which remains in effect today, "includes the meaning assigned under s. 939.22(36) as well as cunnilingus, fellatio or anal intercourse between persons, or any other intrusion, however slight, of any part of a person's body or of any other object into the genital or anal opening either by the defendant or upon the defendant's instruction. The emission of semen is not required." (emphasis added). Id. 940.225(5)(c).
*1230 Legislative Council Notes 1981, WIS. STAT.ANN § 940.225 (West2000) indicate clearly the legislative intent of the revised statute. The Notes contain the following statement:
Presently, (in subsec. (5)(a)) the definition of "sexual intercourse" in the sexual assault statute includes any intrusion of any part of a person's body or of any object into the genital or anal opening of another person. This proposal clarifies that the intrusion of the body part or object may be caused by the direct act of the offender (defendant) or may occur as a result of an act by the victim which is done in compliance with instructions of the offender (defendant). (emphasis added).
Hence, the Wisconsin Legislature adopted language virtually identical to our statute to ensure that it was understood that an offender/defendant who instructs a victim to self penetrate is criminally liable under the statute. It is noted that in New Jersey, the word "actor" is considered synonymous to the word "defendant" in many sections of the Code, including N.J.S.A. 2C:14-1-7. State v. Rumblin, 166 N.J. 550, 556, 766 A.2d 1141 (2001).
A statute that is vague creates a denial of due process because it fails to provide notice and warning to a person that his or her conduct could subject that person to criminal or quasi-criminal liability. State v. Hoffman, 149 N.J. 564, 581, 695 A.2d 236 (1997). A vague statute also "fails to provide officials with guidelines sufficient to prevent arbitrary and erratic enforcement." State v. Afanador, 134 N.J. 162, 170, 631 A.2d 946 (1993).; Town Tobacconist v. Kimmelman, 94 N.J. 85, 118, 462 A.2d 573 (1983). A statute may be challenged for vagueness on its face or for vagueness as applied to the defendant's conduct. State v. Afanador, supra at 175, 631 A.2d 946.
In State v. Cameron, 100 N.J. 586, 498 A.2d 1217, (1985), the Court observed that "the statute must enable a person of common intelligence, in light of ordinary experience to understand whether the contemplated conduct is lawful." (citation omitted) Id. at 591, 498 A.2d 1217. "The determination of vagueness must be made against the contextual background of the particular law and with a full understanding of its purpose." Ibid. Penal laws are subjected to stronger scrutiny and given more exacting and critical assessment under the vagueness doctrine than civil enactments. Id at 592, 498 A.2d 1217.
A statute that is challenged facially may be voided if it is "impermissibly vague in all its application, that is, there is no conduct that it proscribes with sufficient certainty." Cameron, supra at 593, 498 A.2d 1217. Village of Hoffman Estates v. Flipside Hoffman Estates, 455 U.S. 489, 495, 102 S.Ct. 1186, 1192, 71 L.Ed. 2d 362, 369 (1982). A statute can be challenged "as applied" if the law does not with sufficient clarity prohibit the conduct against which it sought to be enforced. State v. Cameron, supra, at 593, 498 A.2d 1217.
The court in Cameron, supra, observed:
(t)o summarize, a law that is challenged for facial vagueness is one that is assertedly impermissibly vague in all its applications. A statute that is challenged as applied, however, need not be proven vague in all conceivable contexts, but must be shown to be unclear in the context of the particular case. In either a facial or as-applied vagueness attack, the level of judicial scrutiny and degree of required clarity will depend on the purpose of the statute, the context in which the law is challenged, the conduct that is subject to its structures, the nature of the punishment that is authorized, and, finally, the potential impact of the statute upon activities and interests *1231 that are constitutionally protected. [Id. at 594, 498 A.2d 1217.]
As noted above, the defendant alleges that the statute is vague on its face because it does not specifically refer to a victim's self penetration, because the word "instruction" can be interpreted in a number of different scenarios and because the defendant was not physically present with the victim. All of these arguments are rejected.
The definition of N.J.S.A. 2C:14-1b, "sexual penetration," includes "... or the insertion of the hand, finger or object into the anus or vagina either by the actor or upon the actor's instruction." The first phrase, "by the actor," clearly addresses the actor inserting his hand or finger or an object into the anus or vagina of the victim. The second phrase, "upon the actor's instruction," clearly contemplates a hand, finger or object of a person other than the actor being inserted into the victim. There is nothing in the statute which indicates or even suggests that the other person cannot be the victim. In cases involving one victim and one defendant, which constitute the vast majority of the cases, the victim is the only other person involved and hence such conduct would clearly involve self penetration.
This Court further rejects the assertion that the phrase "upon the actor's instruction" could be construed to apply only in a multiple defendant situation in which one actor instructs another actor to sexually penetrate the victim. In such circumstances, the actor who physically commits the act is criminally liable as a principal and the actor who instructed him or solicited him or aided or agreed to aid him in the commission of the offense is responsible as an accomplice. N.J.S.A. 2C:2-6(c)(1)(a)(b). Given the existence of this accomplice statute, which is commonly applied in criminal trials and pleas, such interpretation would reduce the phrase "upon the actor's instruction" to meaningless surplus in the statute. This Court concludes that the intent of the New Jersey Legislature was the same as that of the Wisconsin Legislature which enacted virtually identical language and made it clear that this phrase was intended to apply in cases where the actor had instructed the victim to perform self penetration.
Also rejected is the defendant's argument that the word "instruction" requires that the actor be in a position of authority such as a parent, teacher, doctor or employer. As noted above, instructions can be given under many different circumstances and the person giving instructions need not be in an objectively defined position of authority over the person receiving the instructions. Indeed, the circumstances in which a victim does self penetrate normally involve either an adult or older juvenile actor with a child who is intimidated into performing the sexual acts or an adult or juvenile actor with any victim, child or adult, who complies with the actor's instructions due to threats, use of force or threatened use of a weapon. In these scenarios, the actor is indeed in the superior position but certainly not as a result of any traditional definition of authority.
This Court concludes that this statute is not facially vague with respect to the liability of an actor who instructs another, particularly a frightened young child, to perform an act or acts of sexual penetration upon herself. Nor can this Court fathom that a person of ordinary intelligence who reviews this statute would not be well informed that such conduct would result in serious criminal liability. Likewise, this Court does not believe that the statute lacks sufficient guidelines which could result in arbitrary or inconsistent enforcement. Indeed, the statute quite, clear, which probably explains the absence *1232 of any reported cases involving attacks on this twenty-one year old statute based upon this issue. Hence, the statute is not unconstitutionally vague on its face.
The Court further finds that this statute is not unconstitutionally vague as applied to the Defendant. There is nothing in the legislative history to indicate that the statute requires that the actor and the victim be in each other's presence when the instructions are given and the sexual acts committed. Instructions are commonly conveyed via telephone and are not necessarily any less significant or effective than if conveyed in person. Indeed, many different crimes can undoubtedly be committed via the telephone.
A person who is threatened by telephone can be the victim of a terroristic threat, N.J.S.A. 2C:12-3. A person who is coerced by telephone into surrendering property can be the victim of an extortion, N.J.S.A. 2C:20-5. An actor who uses a stolen credit card to order merchandise by telephone has committed a credit card theft. N.J.S.A. 2C:21-6d. An accomplice who is assisting other actors who are physically committing a burglary is guilty himself if he performs his role as the look-out by communicating with them via cell phone and alerting them to the presence of police or anyone else who might observe and report their activities. N.J.S.A. 2C:2-6d.
It is noted that, within N.J.S.A. 2C:14-1-7, the Legislature has specifically required presence or proximity of the victim to the actor in certain circumstances. "Sexual contact" requires that "sexual contact of the actor with himself must be in the view of the victim whom the actor knows to be present." N.J.S.A. 2C:14-1d. "Lewdness" requires a "flagrantly lewd and offensive act which he knows or reasonably expects is likely to be observed by other non-consenting persons who would be affected or harmed." N.J.S.A. 2C:14-4. Hence, this court concludes that if the Legislature had intended to require physical presence or proximity, it would have so indicated.
For all of the foregoing reasons, this Court denies the motion to dismiss count one, aggravated sexual assault, and count two, attempted aggravated sexual assault, is denied.
Also rejected is the defendant's claim that the evidence presented regarding sexually explicit telephone calls was insufficient to justify charges of "sexual conduct" in counts three through fourteen. It is again noted that count three alleges sexual conduct with S.M. during the first call and has as its basis both the sexual conversation and her act of self penetration. Counts four alleges sexual conduct with S.M. during the subsequent call and has as its basis the sexual conversation, including Mr. Maxwell's instruction that S.M. perform an act of self penetration again. As noted above, counts five through fourteen allege sexual conduct by engaging in sexually explicit conversations with the other young girls.
In State v. Bottigliero, 174 N.J.Super. 101, 415 A.2d 396 (Resentening Panel, 1980), the court ruled that the defendant's prior convictions under N.J.S.A. 2A:96-3, debauching and impairing the morals of a minor, were congruent offenses to endangering the welfare of a child under N.J.S.A. 2C:24-4. The court concluded that the defendant's acts of showing a 9 year old girl pictures of a man and women having sexual intercourse and separately asking an 11 year old girl to feel his penis would violate this statute. While not specifically referring to the term "sexual conduct," the court obviously ruled that this section of the endangering statute had been violated.
In Mr. Maxwell's case, all of the victims indicated that he engaged in conversations with them regarding their private parts, and/or oral sex and/or his desire to perform *1233 sexual acts upon them and/or his desire to have them perform sexual acts upon him. Thus probable cause for the commission of endangering the welfare of a child by engaging in sexual conduct was clearly established at the grand jury in counts three through fourteen.
This Court further rejects the defendant's assertion that this statute, N.J.S.A. 2C:24-4a, is unconstitutionally vague as applied to him since the Legislature intended that the victim and the actor be in each other's presence when the alleged sexual conduct is committed. There is nothing in this statute which requires physical presence and, as discussed above, many crimes can be committed over the telephone. The Court concludes that sexually explicit conversation which rises to the level of "sexual conduct" can indeed be communicated by telephone. For the foregoing reasons, the motion to dismiss counts three through fourteen is denied.

The Search Warrant
Finally, the Court has considered defendant's assertion that the search warrant issued by a municipal judge authorizing a search of Mr. Maxwell's residence was "unconstitutionally broad." The warrant was issued on October 5, 1999, after the final telephone call to S.M. had been traced but before Mr. Maxwell's arrest and the discovery of items leading to other alleged victims.
In the affidavit submitted to the municipal judge, a North Haledon detective described the calls to S.M., the traced telephone number and the further investigation which indicated that James L. Maxwell lived at the address in question with his developmentally disabled brother. The search warrant indicates on its face that the issuing judge had found probable cause to believe that:
(t)here has been and now is located certain property obtained and or possessed, controlled, designed and intended for use in connection with the violation of the Penal Laws of the State of New Jersey; or which has been used in connection with the violation of the Penal laws of the State of New Jersey; or which constitutes evidence or tending to show any such violation of such Penal Laws, to wit: N.J.S.A. 2C:14-2a 1 2C:24-4a. The property seized consists of: any tapes, audio tapes, digital recording hardware, phone address books, documents, computer address books, or any other address storage devices, etc.. The exploitation, psychology, psychoanalysis of juveniles.
Defendant particularly challenges the last phrase, "(t)he exploitation, psychology, psychoanalysis of juveniles," and alleges that any items to be seized under this description are ill-defined and could represent a pretext for the officer's alleged underlying intent to seize child pornography. The State has responded that the phrase, which admittedly is unclear, is meaningless surplus in an otherwise valid warrant. The Prosecutor has argued that, given the nature of the other property that could be seized, virtually the entire physical structure was subject to search, and, if child pornography were located, it could be seized as per se contraband.
In State v. Valencia, 93 N.J. 126, 459 A.2d 1149 (1983), the Court observed that:
(a) search based upon a warrant is presumed to be valid once the state establishes that the search warrant was issued in accordance with the procedures prescribed by the rules governing search warrants. The burden of demonstrating the invalidity of such a search is placed upon the defendant. The defendant must establish that there was no probable cause supporting the issuance of the warrant or that the search was *1234 otherwise unreasonable. [Id. at 133, 459 A.2d 1149.] See State v. Kasabucki, 52 N.J. 110, 244 A.2d 101 (1968).
R. 3:5-2 states that:
a search warrant may be issued to search for and seize any property, including documents, books, papers and any other tangible objects obtained in violation of the penal laws of this state or any other state, or possessed controlled designed or intended for use or which has been used in connection with any such violation; or constituting evidence of or tending to show any violation.
In State v. Jones, 308 N.J.Super. 15, 705 A.2d 373 (App.Div.1998), the Appellate Division reversed the motion judge's suppression of a search warrant obtained during a murder investigation. The warrant authorized the seizure from the suspect's home of "any paperwork, including letters, papers or other writings that may establish a motive for the crime of homicide and/or a relationship between the victim and the suspect, and any other paperwork or other material which established identity..." Id. at 27, 705 A.2d 373. The motion judge reasoned that the basis for probable cause "is not whether the issuing judge could, pursuant to common sense, reasonably believe that certain items might be found in a particular place but whether the judge was presented with facts supporting probable cause to believe that the items would be found." Id. at 28, 705 A.2d 373.
In reversing the motion judge, the Appellate Division stated that the "wrong test of probable cause" had been applied and that the judge's requirement that the warrant application establish a likelihood that these items would be found was "contrary to the United States Supreme Court's rejection of `(f)inely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence,' Illinois v. Gates, 462 U.S. [213], 235, 103 S.Ct. [2317], 2330, 76 L.Ed.2d [527] at 546 and violates the preferred standard of `fair probability.'" (citations omitted). State v. Jones, supra, at 28, 705 A.2d 373.
Given the nature of the circumstances regarding the alleged calls to S.M., the request for the seizure of the items listed was reasonable. The request for the tapes and the tape recording equipment was clearly justified by Mr. Maxwell's alleged use of the telephone and his statement to S.M. that he had recorded his first telephone call to her. The request for "phone address books, documents, computer address books or any other address storage devices" was reasonable because the police were investigating a sexual crime allegedly committed by a stranger against a young girl. Certainly these types of items might well be found and could contain evidence as to how Mr. Maxwell allegedly chose S.M. as a victim and whether he possessed any other information about her.
This Court concludes that the phrase "the exploitation, psychology, psychoanalysis of juveniles" was essentially meaningless surplus in this otherwise valid warrant. See United States v. Jacob, 657 F.2d 49, 51 (4th Cir.1981), cert. denied 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982). Moreover, the theory that the use of this phrase by the police constitutes a pretext to search for items not authorized in the warrant is rejected. The phrase is so unclear in its application that it effectively added nothing to the scope of the permissible search. Additionally, if the police really did seek to seize child pornography, such materials, which could be highly relevant as to the defendant's state of mind, could legitimately have been added to the items listed in the search warrant. Indeed, the police actually did seize alleged child pornography which may still be admissible if it is found that these items were *1235 seized within the permissible scope of the search and were recognized by the police as per se contraband. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Bruzzese, 94 N.J. 210, 219, 463 A.2d 320 (1983).
Finally, the court will, as requested by the defendant, separately rule at a subsequent hearing on all of the items seized as to relevance and admissibility at trial.
The motion to suppress the search warrant is denied.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)
[2] This court notes that there is no dispute that the statute is gender neutral, both as to an actor and a victim. State ex rel. M.T.S., 129 N.J. 422, 441, 609 A.2d 1266 (1992).