J-A24008-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN THE MATTER OF: THE ADOPTION OF N.L.S. | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: P.L.S., NATURAL MOTHER | : : : : : : | |
| | : | No. 165 WDA 2020 |

Appeal from the Decree Entered December 31, 2019
In the Court of Common Pleas of Erie County Orphans' Court at No(s):
99 In Adoption 2019

BEFORE:   BENDER, P.J.E., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:              FILED SEPTEMBER 22, 2020

P.L.S. ("Mother") appeals from the December 31, 2019 decree, which granted the petition filed by the Erie County Office of Children and Youth ("OCY" or "the Agency") to involuntarily terminate her parental rights to her minor child, N.L.S (born in December of 2015) ("Child"), pursuant to Sections 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act, 23 Pa.C.S. §§ 2101-2938.[1]   Counsel seeks permission to withdraw from further representation pursuant to Anders v. California, 386 A.2d 738 (Pa. 1967).   Upon review, we find that counsel's Anders brief satisfies the requirements set forth in Commonwealth v. Santiago, 98 A.2d 349 (Pa. 2009), and that there are no non-frivolous claims that Mother can raise herein.   Accordingly, we grant

_____

[1] Child's biological father, J.C.S. ("Father"), is deceased.

counsel's petition to withdraw and affirm the orphans' court's termination decree.

The orphans' court summarized the procedural background and relevant facts of this matter in its Pa.R.A.P. 1925(a) opinion:

> This matter arises from a Petition for Involuntary Termination of Parental Rights to a Child Under the Age of 18 Years ("IVT Petition") filed by the Erie County [OCY] on September 20, 2019, against ... [Mother], biological [m]other of [Child], born [in] December [of] 2015. [Father] ... is deceased, DOD: November 23, 2016. An evidentiary hearing was held before the Honorable Shad Connelly, Senior Judge, on or about December 12, 2019. Mother was represented by court[-]appointed counsel. [Child was] ... represented by separate court[-]appointed legal counsel. After the hearing, a[ final decree] was entered terminating Mother's parental rights....
>
> [] Child was adjudicated dependent by order dated February 23, 2017. [] Child was returned to Mother by order dated April 11, 2018. [] Child was again adjudicated dependent, by order dated October 22, 2018[, and filed October 23, 2018]. The October 23, 2018 order included the following requirements in Mother's permanency plan ("Plan") for reunification:
>
> 1. Refrain from the use of drugs and/or alcohol and submit to random urinalysis testing as requested by the [A]gency at the Esper Treatment Center ... ;
>
> 2. Obtain and maintain gainful employment and submit proof of employment to the [A]gency's request;
>
> 3. Obtain and maintain safe and stable housing and allow the [A]gency access to the home on a monthly basis;
>
> 4. Participate in an agency[-]approved anger management program and follow all recommendations;
>
> 5. Participate in Time Limited Family Reunification services and follow all recommendations;
>
> 6. Engage in mental health services and follow all recommendations;

7. Follow all recommendations for treatment from her recent treatment at St. Vincent Behavioral Services;

8. Participate in and attend any and all medical appointments for [Child];

9. Sign any and all releases of information as requested by the [A]gency.

By order entered after the first permanency review hearing ("PRH") on January 23, 2019, the court found "minimal compliance" with the Plan, and that Mother demonstrated "minimal progress toward alleviating the circumstances which necessitated the original placement." The permanency goal remained reunification, with a concurrent placement plan for [a]doption. Mother's Plan remained the same.

The second PRH was held on July 8, 2019. At that time[,] the court again found minimal compliance with the Plan, and that Mother demonstrated "minimal progress toward alleviating the circumstances which necessitated the original placement." A Permanency Review Order was entered on August 1, 2019, whereby the permanency goal was changed to [a]doption, and the Agency was relieved from offering further services. The IVT Petition was filed on September 20, 2019....

The IVT hearing was held on December 12, 2019. The Agency presented 13 exhibits, admitted without objection, as well as witness testimony from Agency caseworker William Rounsley, Agency permanency caseworker Rachel Campbell, and Denise Digiacomo, a caseworker for the Family Reunification Program at Family Services Northwest Pennsylvania.

Mr. Rounsley testified that he was assigned to the case in February of 2017[,] upon reports of drug and alcohol use by Mother, concerns regarding Mother's housing, concerns relating to Mother['s] meeting [Child's] medical needs, and the history of Mother with the [A]gency. [Child] was originally adjudicated dependent in February [of] 2017, and was reunified with Mother in April of 2018. [Child] was again adjudicated dependent on October 22, 2018.

Mr. Rounsley testified that Mother remained uncooperative and noncompliant throughout the dependency proceedings. Specifically, Mother lost the home that she was living in and became homeless, Mother was not meeting with the Family

Reunification program, Mother was not participating in urinalysis testing, and was not meeting her mental health needs and was not following the recommendations from her discharge from St. Vincent. The Agency requested a goal change to add a concurrent goal of adoption at the first PRH on January 23, 2019, and the request was granted. After continued noncompliance, the permanency goal was changed to adoption at the second PRH. Between the first and second review periods, Mother became pregnant and had concerns regarding her pregnancy. At the second PRH, there were still concerns about Mother failing to have stable housing[,] and Mother was not getting the recommended treatment for her mental health. Mother also failed to produce any urinalysis testing for the [A]gency, and was unable to have any visitation with [Child]. On cross examination, Mr. Rounsley testified that the results of Mother's urinalysis testing were mostly no shows, roughly 42, one diluted urine, and 15 urines that tested positive for Xanax, Suboxone, or a combination of the two drugs.

Ms. Digiacomo testified that she provided services for Family Reunification to Mother from November 8, 2018, to March 15, 2019. Ms. Digiacomo testified that she encouraged Mother to seek mental health treatment and to participate in trauma counseling[;] however, Mother failed to attend after the first initial visit. Ms. Digiacomo testified that she only met with Mother approximately 12 times during that period, when typically, she meets with clients twice a week. Ms. Digiacomo was able to observe Mother and [Child] during five visits, but testified that Mother had trouble handling her own emotions during the visits, and was late to some visits. Ms. Digiacomo testified that when she closed services with Mother in March of 2019, that it was an unsuccessful closing, and that Mother was deficient on every category that Ms. Digiacomo rates for parenting.

The Agency also presented the testimony of its permanency caseworker, Rachel Campbell, who testified that she received this case in August of 2019. Ms. Campbell testified that the adoptive resource family has been meeting [Child's] physical, emotional, and educational needs, and that there are other children in the home that [Child] has bonded with, and that [Child] has bonded with her adoptive parents. Ms. Campbell further testified that [Child] refers to her adoptive parents as ["M]om["] and ["D]ad.["]

Mother testified that when [Child] was adjudicated dependent in October of 2018, there were no drug and alcohol concerns. Mother also testified that she is currently residing in

> stable housing and is receiving mental health services, specifically, anger management counseling, and that she is receiving drug and alcohol treatment through Stairways [B]ehavioral [H]ealth. Mother testified that the last time she had a visit with [Child] was February 14, 2019. Mother further testified that she was not the perpetrator of the domestic violence in her home, that her friends were[;] however, she was arrested and charged with disorderly conduct.

Orphans' Court Opinion ("OCO"), 3/10/20, at 1-5 (citations to record and footnote omitted).

On December 31, 2019, the orphans' court entered its order terminating Mother's parental rights to Child, pursuant to Sections 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act. Counsel filed a timely notice of appeal on January 29, 2020, along with a notice of intent to file an Anders brief in lieu of a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. See Pa.R.A.P. 1925(c)(4) (providing that, in a criminal case, counsel may file of record and serve on the judge a statement of intent to file an Anders/McClendon brief in lieu of filing a statement); see also Interest of J.T., 983 A.2d 771 (Pa. Super. 2009) (determining that the Anders procedure set forth in Rule 1925(c)(4) is proper in a termination of parental rights case). Counsel filed an Anders petition and brief on June 30, 2020.[2]

_____

[2] We note that counsel previously filed an Anders brief on April 15, 2020, followed by a motion to withdraw as counsel on May 1, 2020. However, due to counsel's failure to notify Mother of her appellate rights or to attach a copy of a notification letter to the petition to withdraw, pursuant to Commonwealth v. Millisock, 873 A.2d 748, 752 (Pa. Super. 2005) (opining that the prudent course is to require counsel to attach to the petition to withdraw a copy of the letter sent to the client advising of his or her rights), the motion to withdraw was denied and the Anders brief was stricken by per curiam order dated June 5, 2020.

Mother now presents the following issues for our review, via counsel's Anders brief:

A. Whether the orphans' court committed an abuse of discretion and/or error of law when it concluded that [OCY] had established, by clear and convincing evidence[,] grounds for termination of parental rights under 23 Pa.C.S.[] § 2511(a)(1), (2), (5)[,] and (8)?

B. Whether the orphans' court committed an abuse of discretion and/or error of law when it concluded that the termination of [Mother's] parental rig[ht]s was in ... Child's best interest[] under 23 Pa.C.S.[] § 2511(b)?

Anders Brief at 3.[3]

"When faced with a purported Anders brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw." Commonwealth v. Rojas, 874 A.2d 638, 639 (Pa. Super. 2005) (quoting Commonwealth v. Smith, 700 A.2d 1301, 1303 (Pa. Super. 1997)).

> Court-appointed counsel who seeks to withdraw from representing an appellant on direct appeal on the basis that the appeal is frivolous must:
>
> (1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; (2) file a brief referring to anything that arguably might

---

[3] We further note that the Anders brief violates the Rules of Appellate Procedure by failing to include a copy of the trial court's Rule 1925(a) opinion. See Pa.R.A.P. 2111(b). While we are not impeded from determining the merits of the issues raised herein, as the trial court's opinion is contained within the certified record, we do not condone the failure to comply with the rules. We caution counsel that such violations in the future could result in the quashal of the appeal. See Booher v. Olczak, 797 A.2d 342, 344 n.1 (Pa. Super. 2002).

> support the appeal but which does not resemble a "no-merit" letter or amicus curiae brief; and (3) furnish a copy of the brief to the [appellant] and advise the [appellant] of his or her right to retain new counsel or raise any additional points that he or she deems worthy of the court's attention.
>
> Commonwealth v. Miller, 715 A.2d 1203 (Pa. Super. 1998) (citation omitted).

Rojas, 874 A.2d at 639. Mother's counsel has complied with these requirements. Counsel petitioned for leave to withdraw, and filed a brief satisfying the requirements of Anders, as discussed, infra. Counsel also provided a copy of the brief to Mother, and submitted proof that he advised Mother of her right to retain new counsel, proceed pro se, and/or to raise new points not addressed in the Anders brief.

Our Supreme Court has held, in addition, that counsel must explain the reasons underlying his assessment of the appellant's case and his conclusion that the claims are frivolous. Thus, counsel's Anders brief must satisfy the following criteria before we may consider the merits of the underlying appeal:

> [W]e hold that in the Anders brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

Santiago, 978 A.2d at 361.

Upon review of the Anders brief submitted by Mother's counsel, we find it complies with the technical requirements of Santiago. Counsel's Anders

brief (1) provides a summary of the procedural history and facts of this case; (2) directs our attention, when applicable, to the portions of the record that ostensibly supports Mother's claims of error; (3) concludes that Mother's claims are frivolous; and (4) does so by citation to the record and appropriate/applicable legal authorities.  Thus, we now examine whether Mother's claims are, indeed, frivolous.  We also must "conduct a simple review of the record to ascertain if there appear on its face to be arguably meritorious issues that counsel, intentionally or not, missed or misstated." Commonwealth v. Dempster, 187 A.3d 266, 272 (Pa. Super. 2018) (en banc).

We review an order terminating parental rights in accordance with the following standard:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand.  Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict.  We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

In re R.N.J., 985 A.2d 273, 276 (Pa. Super. 2009) (quoting In re S.H., 879 A.2d 802, 805 (Pa. Super. 2005)).  Moreover, we have explained that:

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.* (quoting *In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)). The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa. Super. 2003).

Mother's issues pertain to Section 2511 of the Adoption Act, which governs the termination of parental rights and requires a bifurcated analysis. In addressing her claims, we are guided by the following:

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S. § 2511, other citations omitted). The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *R.N.J.*, 985 A.2d at 276.

With regard to Section 2511(b), we direct our analysis to the facts relating to that section. This Court has explained that:

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In In re C.M.S., 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. Id. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. In re K.Z.S., 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. Id. at 763.

In re Adoption of J.M., 991 A.2d 321, 324 (Pa. Super. 2010).

Instantly, the orphans' court terminated Mother's parental rights pursuant to Sections 2511(a)(1), (2), (5), (8), and (b). We need only agree with the orphans' court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. In re B.L.W., 843 A.2d 380, 384 (Pa. Super. 2004) (en banc). Here, we analyze the court's decision to terminate under Section 2511(a)(8) and (b), which provide as follows:

> (a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
> * * *
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and

> termination of parental rights would best serve the needs and welfare of the child.

> * * *

> (b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(8), (b).

We first address whether the orphans' court abused its discretion by

terminating Mother's parental rights pursuant to section 2511(a)(8).

> "[T]o terminate parental rights pursuant to 23 Pa.C.S.[] § 2511(a)(8), the following factors must be demonstrated: (1) the child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." In re Adoption of M.E.P., 825 A.2d 1226, 1275-76 (Pa. Super. 2003); 23 Pa.C.S.[] § 2511(a)(8). "Section 2511(a)(8) sets a 12-month time frame for a parent to remedy the conditions that led to the children's removal by the court." In re A.R., 837 A.2d 560, 564 (Pa. Super. 2003). Once the 12-month period has been established, the court must next determine whether the conditions that led to the child's removal continue to exist, despite the reasonable good faith efforts of the Agency supplied over a realistic time period. Id. Termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of Agency services. In re Adoption of T.B.B., 835 A.2d 387, 396 (Pa. Super. 2003); In re Adoption of M.E.P., supra.

- 11 -

In re Z.P., 994 A.2d 1108, 1118 (Pa. Super. 2010) (emphasis added).

Here, the statutory period of twelve months required under Section 2511(a)(8) has clearly been met, as Child was most recently removed from Mother's care in October of 2018, and she currently remains in foster care. Moreover, the orphans' court has determined that the conditions which led to Child's removal still exist, and that termination of Mother's parental rights would best serve the needs and welfare of Child. In support of its decision, the orphans' court opined:

> [T]he record shows that Mother: (1) only recently began treatment for her mental illness; (2) is only recently allegedly drug[-]free; (3) is only recently not homeless; (4) has not maintained employment for more than a few months at a time; and, accordingly, (5) has failed to establish and maintain a lifestyle that would permit her to provide long-term care for ... [C]hild.
>
> The testimony and evidence supports by clear and convincing evidence that the conditions which led to the placement of ... [C]hild continue to exist, Mother cannot or will not remedy those conditions within a reasonable period of time, and any services or assistance reasonably available to Mother are not likely to remedy the conditions which led to placement within a reasonable period of time.

OCO at 5-6. We deem the orphans' court's determination under Section 2511(a)(8) to be well-supported by the record, and we discern no abuse of discretion.

As for its analysis under Section 2511(b), the orphans' court found:

> [P]rimarily due to the young age of ... [C]hild at the time of separation, and the lapse of over 12 months since [she has] had any contact with Mother, ... it is unlikely any bond between Mother and [C]hild persists. Ms. Campbell testified that ... [C]hild seeks and receives parental nurturing from the adoptive resource family.

- 12 -

> Further, even if the court were to find an ongoing bond, it would be in the best interests of … [C]hild to sever that bond for the sake of achieving safety, consistency, and permanency for … [C]hild.

Id. at 8.[4]  As there is competent evidence in the record to support the orphans' court's credibility and weight assessments regarding Child's needs and welfare, and the absence of any bond with Mother, we conclude that the court did not abuse its discretion as to Section 2511(b).

Our review of the record reveals no other potential, non-frivolous issues that Mother could raise on appeal.  As such, we agree with counsel that a direct appeal in this case is wholly frivolous.  Accordingly, we grant counsel's petition to withdraw, and we affirm the decree terminating Mother's parental rights to Child, pursuant to 23 Pa.C.S. § 2511(a)(8) and (b).

Decree affirmed.  Petition to withdraw granted.

_____

[4] The orphans' court's decision is further supported by the following statement by counsel for Child:

> What's unfortunate about this case is the fact that we have a child who's four years of age who has been in care for more than half of her life.  Reunification was accomplished at one point, and it didn't last very long, I think about six months roughly.  At that point in time, [Child] was re-detained, and we have not been able to reunify despite many services that have been offered.

> The other significant concerning thing to me is that there have been four or five visits during the entire pendency of the case as it stands now….  Stability is paramount for … [C]hild. Reunification was attempted, it was achieved, it was attempted again.  We can't keep doing this.  It's not in her best interests.

N.T. Hearing, 12/12/19, at 88.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>9/22/2020</u>