15 A.3d 865

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. PIERCE
DAIQUAN BRYANT, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 29, 2010—Decided March 3, 2011.

Before Judges WEFING, PAYNE and BAXTER.

*Robin Kay Lord* argued the cause for appellant (*Law Offices of Robin Kay Lord, LLC,* attorneys; *Ms. Lord,* of counsel and on the brief).

*Dorothy Hersh,* Assistant Prosecutor, argued the cause for respondent (*Joseph L. Bocchini, Jr.,* Mercer County Prosecutor, attorney; *Ms. Hersh,* of counsel and on the brief).

The opinion of the court was delivered by

BAXTER, J.A.D.

After entering a negotiated plea of guilty to the third-degree crime of endangering the welfare of a child, *N.J.S.A.* 2C:24–4(a), defendant Pierce Bryant appeals from his October 13, 2009 conviction. He raises a single claim: "an insufficient factual basis was given by the defendant for this offense and, as such, the conviction should be set aside." In particular, defendant urges us to construe the mental culpability element of the statute by holding that the *mens rea* element applies not only to the sexual conduct itself, but also to the result of that conduct. Accordingly, defendant argues that the trial court should not have accepted his guilty plea because he did not admit to knowledge that his conduct would impair or debauch the morals of the child. The State, in contrast, urges us to conclude that a defendant need not admit he was aware his conduct would debauch the morals of the child, and thus urges us to affirm defendant's conviction.

After considering the parties' respective arguments in light of the record and governing law, we conclude that a conviction for a violation of *N.J.S.A.* 2C:24–4(a) does not require proof that a defendant knew that his sexual conduct would impair or debauch

the victim's morals. Instead, the State must prove, or a defendant must admit, only that he knowingly engaged in sexual conduct with a child below the age of sixteen and that such conduct had the capacity to impair or debauch the morals of the child.

## I.

In a four-count indictment returned by the Mercer County Grand Jury on May 1, 2009, defendant was charged with first-degree aggravated sexual assault, *N.J.S.A.* 2C:14-2(a)(2)(a) (count one); third-degree aggravated criminal sexual contact, *N.J.S.A.* 2C:14-3(a) (count two); and two counts of third-degree endangering the welfare of a child, *N.J.S.A.* 2C:24-4(a) (counts three and four). The charges were based on allegations that defendant, who was then eighteen years old, engaged in sexual intercourse with a female relative who was fourteen years old, and who was at least four years younger than defendant.

After plea negotiations, defendant was offered the opportunity to plead guilty to a single count of third-degree endangering the welfare of a child, with the State agreeing to recommend a three-year suspended custodial sentence. Accepting the State's plea offer, defendant entered his guilty plea under oath on July 10, 2009. His factual basis was limited to his admission that he engaged in sexual intercourse with the victim when she was less than sixteen years of age. He was not asked, and did not admit, whether he agreed that such conduct "would impair or debauch the morals of the child." *See N.J.S.A.* 2C:24-4(a). Defendant's factual basis, as elicited by defense counsel, was limited to the following:

Q: Mr. Bryant, I want to direct your attention back to a time period between November 6, 2007 and April of 2008. In the City of Trenton, you did in fact engage in sexual conduct, that is, vaginal intercourse with a minor; is that correct?

A: Yes.

Q: And her initials are [victim's initials]?

A: Yes.

Q: She was born in 1993?

A: Yes.

Q: She was under sixteen years old at the time; is that correct?
A: Yes.

After asking defendant how old he was at the time of the plea, and learning that he was about to turn twenty, the judge made the following findings:

THE COURT: All right. The plea is made voluntarily, knowingly, and intelligently. Does not result from any threats or undisclosed promises. The defendant understands the nature of the charge and the consequences of the plea. He is thinking clearly. *There is a sufficient factual basis for the plea. He has testified to the necessary elements of the offense* (emphasis added).

Approximately five months after sentencing, defendant was arrested for a violation of the conditions of his suspended custodial sentence. On March 9, 2010, the trial judge granted defendant's motion for bail pending appeal and for a stay of sentence.

Defendant's appeal was heard on April 13, 2010 on an excessive sentence (ESOA) calendar, *see R.* 2:9–11. Defendant argued that the factual basis he provided was insufficient because neither trial counsel nor the trial judge elicited the "mens rea element" required to establish a violation of *N.J.S.A.* 2C:24–4(a). He also argued that the offense is not a strict liability offense and therefore, the absence of any mental culpability element from the guilty plea colloquy had resulted in an insufficient factual basis for his plea of guilty. He also contended that his factual basis was insufficient because he was never asked to admit he knew that his sexual conduct would, as required by *N.J.S.A.* 2C:24–4(a), "impair or debauch the morals of the child." To support his argument that his factual basis was insufficient, defendant pointed to the Model Jury Charge, which instructs the jury that such a finding is a required element of the offense.

The State argued before the ESOA panel that the Model Jury Charge was incorrect and that the only mental culpability element required for a conviction is defendant's knowledge that he was engaging in sexual conduct. The panel did not decide the statutory interpretation question raised by the parties, but instead, by order of April 14, 2010, transferred defendant's sentencing appeal to a plenary calendar.

Before us, defendant presses the same argument he raised before the ESOA panel, namely that his "factual basis was insufficient as a matter of law as there was no testimony that [he] knew his conduct would likely impair or debauch the morals of a child, therefore, his plea must be set aside and his conviction reversed." He maintains that the factual basis he provided on July 10, 2009 "was deficient" because he was never asked, and did not admit, that he was aware his conduct had the capacity to impair or debauch the morals of the victim. Instead, according to defendant, "[t]he only fact testified to by the defendant was that he had intercourse with [the victim] who was born in 1993 and under age sixteen, and that he turned nineteen [in] November [2008]." He also contends that the mental culpability element could not "be reasonably inferred [from] the facts elicited at the plea hearing."

Relying on our unpublished opinion in *State v. Speed*, No. A–5912–07, 2009 *WL* 4794245 (App.Div. December 15, 2009), and upon the language of the Model Jury Charge,[1] which requires proof that the defendant knew his sexual conduct would impair or debauch the morals of the child, defendant urges us to reverse his conviction.

The State, in contrast, urges us to affirm defendant's conviction. The State relies first upon the Supreme Court's opinion in *State v. Hackett*, 166 *N.J.* 66, 80, 764 *A.*2d 421 (2001), in which the Court held that a conviction under the endangering statute does not

---

[1] In relevant part, the model jury charge provides:

*The third element that the State must prove* beyond a reasonable doubt *is that defendant engaged in the sexual conduct knowing that it would impair or debauch the morals of the child.* Sexual conduct which would impair or debauch the morals of the child is conduct which tends to corrupt, mar, or spoil the morals of a child under sixteen (16) years of age. *The State does not have to show that the sexual conduct actually impaired or debauched the morals of (name of victim).* In analyzing the proofs to determine whether the evidence demonstrates that defendant's conduct would tend to impair or debauch the morals of the child, *evaluate the proofs in the context of objectively reasonable contemporary standards. . . .*
[*Model Jury Charge (Criminal)*, "Endangering the Welfare of a Child" (2003) (emphasis added).]

require proof that the defendant's conduct actually impaired or debauched the morals of the child. Instead, the State need only prove that the sexual conduct at issue has the capacity to do so. *Ibid.* Thus, according to the State, "the standard˙ articulated in *Hackett* seems clearly designed to be focused on its impact on the *hypothetical victim*—rather than on a defendant's actual knowledge that his action would, indeed, impair or debauch the morals of his victim." For that reason, even though defendant's factual basis did not include an admission that he was aware his conduct had the capacity to debauch or impair the victim's morals, the State urges us to reject defendant's argument that his guilty plea and conviction should be vacated.

The State also contends that to find otherwise would provide a "built-in defense," for example, to a defendant charged with endangerment whose child victim was developmentally disabled and did not have the cognitive capacity to sustain impaired or debauched morals. Alternatively, a built-in defense would be provided where the child victim was more mature or worldly than the typical child in terms of sexual experience, and the defendant would be able to argue he was unaware his sexual conduct would debauch the child's morals. Taken to "its most absurd conclusion, a defendant who believed sexual conduct with a child was not harmful to the child, and, rather, believed that [such] activity was beneficial, could not be convicted of endangering that child's welfare." Such a result, the State contends, "is simply contrary to the goal of the statute—and also contrary to common sense." Instead, according to the State, the Legislature intended "to target and punish those who purposely or knowingly engage in sexual conduct when that conduct is directed at a child, and is of the type that a reasonable person would view as tending to impair or debauch that child's morals."

Last, by analogy, the State points to *State v. Gandhi*, 201 *N.J.* 161, 170, 989 *A.*2d 256 (2010), in which the Supreme Court construed the version of the stalking statute, *N.J.S.A.* 2C:12–10, that was in effect at the time of the defendant's trial. The Court

held that the State was required only to prove that a defendant engaged in a course of repeated stalking conduct that would cause a reasonable person to fear bodily injury or death. *Ibid.* In so concluding, the Court rejected the defendant's argument that the State was also required to prove he was aware, or intended, that his conduct would create the proscribed result. *Ibid.* The State urges us to hold, similar to the Supreme Court's approach in *Gandhi,* that the clause in the endangering statute, "conduct which would impair or debauch the morals of a child," describes "not what a defendant must know about the effect of the conduct in which he engages, but, rather, the type of conduct for which a defendant may be punished."

## II.

█ In relevant part, the endangering the welfare of a child statute provides:

> Any person having a legal duty for the care of a child or has assumed responsibility for the care of a child who engages in sexual conduct *which would impair or debauch the morals of the child,* ... is guilty of a crime of the second-degree. Any other person who engages in conduct ... as described in this subsection to a child under the age of 16 is guilty of a crime of the third degree. [*N.J.S.A.* 2C:24–4(a) (emphasis added).]

Defendant had no duty, legal or assumed, to care for the victim. Therefore his conduct falls under the "any other person" provision contained in the last sentence.

As is evident from the language of *N.J.S.A.* 2C:24–4(a), it contains no mental culpability element. In 1981, to address all similar statutes, the Legislature enacted what is commonly known as the "gap filler" statute, which provides that when no culpable mental state is specified in a criminal statute, the mental state of "knowingly" shall be deemed the required mental element. *N.J.S.A.* 2C:2–2(c)(3). The same statute specifies that the mental culpability element of "knowing" conduct may be required "with respect to *some or all* of the material elements" of the crime. *Ibid.* (emphasis added).

The term "knowingly" is defined by statute as follows:

> A person acts knowingly with respect to the nature of his conduct or the attendant circumstances if he is aware that his conduct is of that nature, or that such circumstances exist, or he is aware of a high probability of their existence. A person acts knowingly with respect to a result of his conduct if he is aware that it is practically certain that his conduct will cause such a result. "Knowing," "with knowledge" or equivalent terms have the same meaning.
>
> [*N.J.S.A.* 2C:2–2(b)(2).]

In light of the provisions of the gap-filler statute, both sides agree that "knowingly," as defined in *N.J.S.A.* 2C:2–2(b)(2), is the required mental element. They also agree that conviction under *N.J.S.A.* 2C:24–4(a) requires proof that the sexual conduct had the capacity to impair or debauch the morals of the child. They sharply disagree on whether a defendant must also admit that he was aware, at the time in question, that his sexual conduct had the capacity to impair or debauch the morals of the child. Defendant urges us to resolve that question in the affirmative, while the State urges us to instead hold that the "knowingly" element applies only to the "engages in sexual conduct" element of the offense. As we have already noted, the gap filler mental culpability element of "knowingly" must be applied to at least one, but not necessarily all, of the elements of the offense. *N.J.S.A.* 2C:2–2(c)(3).[2] Therefore, if the "knowingly" state of mind is found to be a mandatory requirement for the first element, "engages in sexual conduct," the *mens rea* element would not automatically be a mandatory requirement of the second element, "would impair or debauch the morals of the child." Stated differently, because *N.J.S.A.* 2C:2–2(c)(3) specifies that the gap filler statute applies to "some or all" of the elements of the offense, it is possible for the mental culpability requirement to be satisfied by proof only that the defendant *knowingly* engaged in sexual conduct.

---

[2] The gap filler statute also specifies that if the statute "clearly indicat[es] a legislative intent" to do so, the statute may be construed as a strict liability offense, with no mental culpability element required. *N.J.S.A.* 2C:2–2(c)(3). We need not address that issue as we have already concluded that the statute in question is not a strict liability offense. *See State v. Demarest*, 252 *N.J.Super.* 323, 329, 599 *A.*2d 937 (App.Div.1991).

We therefore begin our analysis by determining whether the "knowingly" requirement should be applied to the first element of the offense. Some forms of sexual contact with a child, such as sexual intercourse, or touching the child's intimate parts, are by their nature, so obviously of a sexual nature that it would seem superfluous to require proof that the actor knew he was engaging in "sexual conduct" within the meaning of *N.J.S.A.* 2C:24–4(a). Almost by definition, one cannot engage in such conduct without a recognition that it is sexual in nature.

Other forms of behavior, especially those that do not involve the touching of the child, are more ambiguous in their nature and may not be understood by the actor as being "sexual conduct." Indeed, although ultimately rejected, that very claim has been advanced from time to time in appeals from conviction under the endangering statute. *See Hackett, supra,* 166 *N.J.* at 81, 764 *A.*2d 421 (standing nude in front of a window while children were walking by); *State v. Maxwell,* 361 *N.J.Super.* 502, 517–18, 825 *A.*2d 1224 (Law Div.2001) (engaging children in telephone conversations about their genitalia and about oral sex), *affirmed o.b.,* 361 *N.J.Super.* 401, 825 *A.*2d 1162 (App.Div.), *certif. denied,* 178 *N.J.* 34, 834 *A.*2d 407 (2003); and *State v. White,* 105 *N.J.Super.* 234, 236–37, 251 *A.*2d 766 (App.Div.) (showing a child photographs of nude men and women in various postures), *certif. denied,* 54 *N.J.* 242, 254 *A.*2d 789 (1969).

█ Thus, because some forms of sexual conduct are by their nature more ambiguous, and involve no touching of the child, it stands to reason that the Legislature would have intended to require proof that the defendant knowingly engaged in sexual conduct. If no mental culpability element were to be required, a defendant could be convicted of a violation of *N.J.S.A.* 2C:24–4(a) without any awareness that his conduct was sexual in nature. We therefore conclude that the mental culpability element of "knowingly" is a required component of the first element of the statute, "engages in sexual conduct." As we have noted, *N.J.S.A.* 2C:2–2(c) does not require the gap filler *mens rea* standard of "know-

ingly" to apply to all elements of the offense. Consequently, once it becomes a mandatory component of "engages in sexual conduct," it need not also be a mandatory component of the second element of the offense unless the legislative intent clearly so requires.

When construing a statute, our primary goal is to determine the legislative intent. *State v. Ciancaglini,* 204 *N.J.* 597, 610–11, 10 *A.*3d 870 (2011); *Gandhi, supra,* 201 *N.J.* at 176, 989 *A.*2d 256. "If the plain language leads to a clear and unambiguous result, then our interpretive process is over." *Gandhi, supra,* 201 *N.J.* at 177, 989 *A.*2d 256 (quoting *Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys.,* 192 *N.J.* 189, 195, 927 *A.*2d 543 (2007)). When the plain language of the statute does not resolve the issue presented, we turn to extrinsic sources to guide us. *Ibid.* Of all extrinsic sources, one of the strongest guideposts is a statute's legislative history. *Ibid.*

The legislative history of the present statute, *N.J.S.A.* 2C:24–4(a), demonstrates that the Legislature has, over many years, continuously strengthened the statute, both by criminalizing new forms of sexual exploitation of children, and by increasing the penalties for those convicted of violating the statute. We turn now to a review of those measures.

Although child protection statutes existed as early as 1898, *see L.* 1898, *c.* 235, § 56, it was not until 1945 that the Legislature included the language, "tends to debauch ... or which tends to impair the morals":

> Any person who shall force or induce any child under the age of sixteen years to do or to submit to the doing of any act which tends to debauch such child or which tends to impair the morals of such child shall be guilty of a misdemeanor.
>
> [*L.* 1945, *c.* 242 (codified as *N.J.S.A.* 2A:96–3).]

Notably, the statute required a showing that the adult "force[d] or induce[d]" the child to engage in such behavior.

The 1945 revision, like its 1898 antecedent, contained no mental culpability requirement. As the sponsor's statement indicates, the

object of the 1945 revision was to permit grand juries, i.e., the community, to determine what conduct was illegal:

> The object of this act is to permit the Grand Juries of the various counties of this State to properly charge a defendant in their indictment with the true nature of the crime committed.
>
> [*Sponsor's Statement to Assembly No. 141* (March 12, 1945).]

Thereafter, the 1971 commentary to the proposed Criminal Code, *L.* 1979, *c.* 178, § 46, observed that "[t]he intent [of *N.J.S.A.* 2C:24–4(a) ] is to incorporate the crime now defined in N.J.S. 9:6–3 without substantial change except for the penalty provisions." 2 *Final Report of the New Jersey Criminal Law Revision Commission,* Commentary at 259 (1971).

In 1979, the Legislature expanded the reach of the statute and broadened the statute's ability to protect children from sexual exploitation by eliminating the "force[d] or induce[d]" requirement. *L.* 1979, *c.* 178, § 46. It was the 1979 amendment of the statute that created the present version of *N.J.S.A.* 2C:24–4(a). The Legislature viewed the 1979 version of the statute as a major expansion of the statutory protection of children from sexual exploitation. Indeed, the Committee Statement at the time the present version of the statute was introduced heralded the statute as an "enlarge[ment]" of the protections of children from sexual abuse:

> [T]he scope of activities prohibited by [*N.J.S.A.*] 2C:24–4 was *enlarged* to encompass any sexual conduct which would impair or debauch the morals of a child. . . .
>
> [*Senate Judiciary Committee Statement to Senate No. 3203* (June 18, 1979) (emphasis added).]

Ever since the present version of the statute was enacted in 1979, the Legislature has continuously strengthened its provisions. The child pornography section of the endangering statute was expanded in 1983 to prohibit the videotaping of children in pornographic situations, *L.* 1983, *c.* 494, § 1; in 1992, to prohibit the knowing possession or viewing of child pornography, *L.* 1992, *c.* 2, § 1; and in 1995 to prohibit pornographic depictions of children in computer games, *L.* 1995, *c.* 109, § 1.

Another protection for children came in 1989 when the Legislature amended the statute by allowing child endangerment victims to bring criminal charges within five years of turning eighteen, rather than the former two years, *L.* 1989, *c.* 228, § 1; and again in 1994, when the Legislature added a "discovery" rule extension of the limitations period, *L.* 1994, *c.* 53, § 1.[3]

Perhaps the most significant strengthening of the statute came in 1992, when the Legislature increased the penalties for those convicted of a violation of the endangering statute by upgrading what had been a third-degree offense to a second, and what had been a fourth-degree offense to a third. *L.* 1992, *c.* 6, § 1. To underscore the importance of toughening the penalties, Governor Jim Florio issued a news release upon his signing of the legislation in which he declared:

> Today we sign child protection legislation ... that reflect[s] our commitment to the cherished place children hold in our hearts. The well-being of our children demands that we provide increased deterrence for heinous crimes. Too often, their cries and needs go unheard....
>
> [Office of the Governor, *News Release*, "Governor Florio Signs Laws Toughening Penalties and Boosting Child Protection Efforts." (May 13, 1992).]

Thus, from the moment the present version of the endangering statute was enacted in 1979—when the Legislature deemed it an "enlarge[ment]" of prior statutory protections—to 1994, when the two-year "discovery" rule was added, our Legislature has consistently strengthened the statute, broadened its reach, and toughened its penalties. In light of that legislative history, we have considerable doubt that the Legislature intended the second element of *N.J.S.A.* 2C:24-4(a) to require proof that a defendant knew his conduct would impair or debauch the child's morals, as such a construction would weaken the very protection of children that the Legislature has for decades striven to achieve. We therefore conclude that the second element of the statute, "con-

---

[3] The 1994 revision, codified as *N.J.S.A.* 2C:1-6(b)(4), specifies that a prosecution for a violation of *N.J.S.A.* 2C:24-4 must be commenced within five years of the victim attaining the age of eighteen, "or within two years of the discovery of the offense by the victim, whichever is later."

duct which would impair or debauch the morals of the child," can be satisfied without proof that the defendant was aware his conduct would cause such a result.

Neither of defendant's two arguments causes us to reach a different result. The opinion in *Speed*, which is per curiam, is of no precedential value.[4] *See R.* 1:36–3 (providing that "no unpublished opinion shall constitute precedent or be binding upon any court"). As for the provisions of the Model Jury Charge, such instructions are not binding authority, and are subject to revision and correction whenever the language of the jury charge is contrary to an appellate interpretation of the statute in question. *See State v. Smith*, 197 *N.J.* 325, 338–39, 963 *A.*2d 281 (2009) (directing the Model Jury Charge Committee to "correct its instruction for the offense of possession of a defaced firearm ... to ensure that the model charges are consistent with this opinion").

Our conclusion that the State is not required to prove that a defendant was aware his sexual conduct would impair or debauch the morals of the child is strengthened by a line of cases holding that certain crimes are deemed complete regardless of whether the actual harm actually occurs, so long as the defendant knowingly engages in the prohibited conduct. Most directly on point is *State v. Speth*, 323 *N.J.Super.* 67, 87, 731 *A.*2d 1232 (App.Div. 1999), involving the crime of witness tampering, in which we held that "the criminal act is completed regardless of whether or not the result is achieved." Stated differently, a defendant need only be aware of the nature of his conduct to support a conviction. *Ibid.* Consequently, we concluded that the second definition of "knowingly" in *N.J.S.A.* 2C:2–2(b)(2), which requires the actor to be "practically certain that his conduct will cause such a result," was not an element of the offense. *Ibid.* We observed that the

---

[4] The *Speed* panel held that a conviction under *N.J.S.A.* 2C:24–4(a) requires proof that a defendant was aware his conduct would impair or debauch the child's morals. *State v. Speed, supra,* 2009 *WL* 4794245, *3.

statute defining "knowingly," *N.J.S.A.* 2C:2–2(b)(2), "sets forth two different meanings of the term." *Id.* at 86, 731 *A.*2d 1232 (citation omitted). "In the second sentence, ... the focus is on the intended result." *Ibid.* Since the crime of witness tampering is committed regardless of whether the result is achieved, "it made little sense to require the actor to be 'practically certain that his conduct would cause such a result.'" *Id.* at 87–88, 731 *A.*2d 1232.

Similarly, in *State v. Hackett, supra,* 166 *N.J.* at 70–71, 764 *A.*2d 421, a case concerning whether a child's observation of the defendant's nudity was sufficient to convict him of endangering a child, the Supreme Court held that "[p]roof of actual impairing or debauching of the victims' morals is not required. The legislative language [in *N.J.S.A.* 2C:24–4(a)] prohibits any sexual conduct that *would* result in the impairing or debauching of an average child in the community." *Id.* at 80, 764 *A.*2d 421. The "question is not whether the victims of the alleged endangering actually had their morals impaired or debauched, but whether the actor's 'sexual conduct' was conduct that likely would impair or debauch the morals of a child in the community." *Id.* at 83, 764 *A.*2d 421. "The word 'would' signals the futurity of a likely event; it does not require the event's actual occurrence." *Id.* at 80, 764 *A.*2d 421. Whether the defendant's conduct actually impaired the child's morals "is immaterial." *Ibid.* (citation omitted).

Likewise, in *State v. Overton,* 357 *N.J.Super.* 387, 393, 815 *A.*2d 517 (App.Div.), *certif. denied,* 177 *N.J.* 219, 827 *A.*2d 287 (2003), which addressed the question of whether a sleepwalking defendant could be criminally liable for endangering the morals of a child, we declared that the endangering statute requires only "a conscious and knowing *action* by defendant." Therefore, "[t]he modifying language of 'which would impair or debauch the morals of a child' ... is merely a consequence of that act." *Ibid.* For the defendant to be found guilty, he "had to be aware that he engaged in the sexual conduct," that is, "that he performed such an act." *Ibid.* We held that "[t]o convict the defendant of child endangerment, the State had to prove beyond a reasonable doubt that

defendant knowingly engaged in sexual conduct which would impair or debauch [the victim's] morals...." *Ibid.* What is significant is what we did *not* say in *Overton.* We did not require the State to prove defendant's knowledge that his conduct would impair the child's morals. We reversed the defendant's conviction because the prosecutor's closing, to which there was no objection, and to which no curative instruction was issued, could have led the jury to believe that defendant's mere reckless act of going to sleep naked, while knowing he had a propensity to sleepwalk, was sufficient to convict him when he wandered into the child victim's bedroom naked while in a somnambulistic state, got into the child's bed, and began pressing his penis against her body. *Id.* at 395–96, 815 *A.*2d 517. We held that the State was required to prove the defendant *knew* he had left his own bed, not merely that he had consciously disregarded the risk that he might do so. *Id.* at 395, 815 *A.*2d 517. We did not require the State to also prove the defendant was aware that by pressing his naked body against the victim's, he would impair or debauch her morals. The only *mens rea* element we required was proof that the defendant knowingly engaged in sexual conduct, *ibid.,* not that he knew that his conduct would impair the victim's morals.

Thus, applying *Speth, Hackett* and *Overton,* the result, if any, of defendant's actions is of no consequence, and, therefore, so is defendant's belief or knowledge in the likelihood that his knowing sexual conduct would impair or debauch the victim's morals. Because the crime of endangering is committed regardless of whether the result of impairing or debauching the morals of the child is achieved, it makes little sense to require the actor to know that his conduct would cause such a result. Thus, we conclude *N.J.S.A.* 2C:24–4(a) does not require, as an element of the offense, that a defendant admit to, or know, at the time of the offense, that his conduct would impair or debauch the victim's morals. Instead, to support a conviction, the State must prove only that a defendant knew he had engaged in sexual conduct with

a child less than sixteen years old; and that such conduct had the capacity to impair or debauch the child's morals.

Indeed, as the State correctly argues, "to find otherwise would provide a built-in defense" for any defendant who asserted his victim was already so sexually active that her morals were not impaired by engaging in sexual activity with the defendant. This element, the determination of whether the conduct would result in the impairing or debauching of an average child in the community, is one that the community, i.e., the factfinder, decides without reviewing or requiring that the mental culpability of the defendant as to the result be proven. The Court in *Hackett* declared such a determination to be "well within the abilities of the average jury," as its role was "arbiter of community standards." 166 *N.J.* at 83, 764 *A.*2d 421.

Our conclusion that a violation of *N.J.S.A.* 2C:24–4(a) is established regardless of a defendant's knowledge that his sexual conduct would cause harm to the child finds further support in the conclusion the Supreme Court reached in *Gandhi, supra,* 201 *N.J.* at 176–88, 989 *A.*2d 256, construing a portion of the stalking statute, *N.J.S.A.* 2C:12–10(b). As the State argues, in *Gandhi,* the Court considered the defendant's argument that his conviction should be reversed because he did know that his conduct would, as required by the statute then in effect, "cause a reasonable person to fear bodily injury . . . or . . . death."[5] *Id.* at 169, 989 *A.*2d 256. The defendant argued that the offense's mental culpability applied both to a defendant's conduct and to the result of that conduct. *Id.* at 169, 989 *A.*2d 256. He maintained the State's proofs were deficient because the State failed to prove that he had an intent to

---

[5] The entire subsection in effect at the time provided:

A person is guilty of stalking, a crime of the fourth degree, if he purposely or knowingly engages in a course of conduct directed at a specific person that would cause a reasonable person to fear bodily injury to himself or a member of his immediate family or to fear the death of himself or a member of his immediate family.

[*N.J.S.A.* 2C:12–10(b) (version existing prior to revision adopted by *L.* 2009, *c.* 28, § 1, effective March 21, 2009).]

alarm the victim, and was aware that sending her 142 pages of sexually graphic and threatening letters, would cause her to fear for her life. *Id.* at 170–73, 989 *A*.2d 256. The Court rejected defendant's argument, concluding that the statutory offense "reaches and punishes a person who engages in a course of stalking conduct even if the person is operating under the motivation of an obsessed and disturbed love that purportedly obscures appreciation of the terror that his or her conduct would reasonably cause to the victimized person." *Id.* at 170, 989 *A*.2d 256.

In so holding, the *Gandhi* Court rejected the defendant's argument that his conviction should be reversed because the State failed to prove that he was aware his stalking conduct would terrorize the victim. *Id.* at 188, 989 *A*.2d 256. The gap-filler statute played no role in the Court's reasoning, and the Court's holding was instead the result of a close textual analysis and a review of the legislative history. *Id.* at 187, 989 *A*.2d 256. The holding in *Gandhi* is significant for our purposes nonetheless, for it recognizes the principle that in appropriate circumstances criminal culpability can, and indeed should, attach whenever a defendant's illegal conduct creates a risk that the proscribed result will occur, even if the defendant intended no such result or was unaware that his conduct would cause such a result.

Thus, we conclude, based upon the legislative history, and our review of applicable caselaw, that it would be contrary to the legislative intent to apply the *N.J.S.A.* 2C:2–2(c)(3) gap-filler statute in such a fashion as to require the State to prove that a defendant was aware his sexual conduct would impair or debauch the child's morals. We do recognize that, as a general rule, penal statutes must be strictly construed. *Ciancaglini, supra,* 204 *N.J.* at 611, 10 *A*.3d 870. However, the principle of strict construction " 'does not prevent a court from reading the statute in relation to the mischief and evil sought to be suppressed[.]' " *State v. Ivory,* 124 *N.J.* 582, 594, 592 *A*.2d 205 (1991) (quoting *State v. Meinken,* 10 *N.J.* 348, 352, 91 *A*.2d 721 (1952)). This is such an instance.

Consequently, we do not view the strict construction principle as contravening the conclusion we reach today.

Affirmed.