**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3159-14T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

G.A.[1],

    Defendant-Appellant.

_____

Submitted November 6, 2017 – Decided November 22, 2017

Before Judges Sabatino and Ostrer.

On appeal from Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 14-01-0060.

Law Offices of Brian J. Neary, attorney for appellant (Brian J. Neary, of counsel and on the brief; Perry Primavera, on the brief).

Michael H. Robertson, Somerset County Prosecutor, attorney for respondent (Perry Farhat and Paul Heinzel, Assistant Prosecutors, on the brief).

PER CURIAM

_____

[1] For privacy reasons, we use initials for defendant and the minor victim, who is related to him.

Tried by a jury in 2014, defendant G.A. was convicted of third-degree endangering the welfare of a child by engaging in "sexual conduct[,] which would impair or debauch the morals of a child" under the age of sixteen, N.J.S.A. 2C:24-4(a) (count two).[2] Defendant was acquitted of the more serious offense of first-degree aggravated sexual assault committed by an act of sexual penetration on a child under the age of thirteen. N.J.S.A. 2C:14-2(a)(1) (count one). The trial court sentenced him to a four-year custodial term, with Megan's Law consequences, and other penalties and conditions.

On appeal, defendant raises the following arguments, none of which were raised by his trial counsel:

> POINT I
>
> THE COURT'S FAILURE TO INSTRUCT THE JURY ON THE ELEMENTS OF SEXUAL CONTACT, WHICH IS THE ALTERNATE SEXUAL CONDUCT THE STATE ALLEGED TO SUPPORT THE CHARGE OF ENDANGERING, IS FATAL IN THIS MATTER AND COMPELS THE REVERSAL OF [G.A.]'S CONVICTION. (not raised below)
>
> POINT II
>
> THE COURT MUST VACATE [G.A.]'S CONVICTION AND ORDER A NEW TRIAL BECAUSE OF PROSECUTORIAL MISCONDUCT. (not raised below)

---

[2] The Legislature revised this provision after the time of defendant's conduct to raise the definitional maximum age of a child from sixteen to eighteen. See L. 2013, c. 136, § 1 (effective Aug. 14, 2013).

POINT III

DEFENDANT'S CONVICTION MUST BE REVERSED BASED UPON INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL. (not raised below)

a. Trial counsel's failure to object to the State's request that the Court allow the jury to consider an alternate sexual offense as the basis for endangering, and counsel's failure to request the jury be properly charged constituted ineffective assistance of counsel. (not raised below)

b. Trial Counsel's repeated failure to raise appropriate objections constitutes ineffective assistance of counsel. (not raised below)

POINT IV

CUMULATIVE TRIAL ERRORS DEPRIVED DEFENDANT OF A FAIR TRIAL AND WARRANT REVERSAL. (not raised below)

After initially reporting incidents of defendant's improper behavior to her mother, M.R. was then interviewed by the prosecutor's office. She reiterated her account of defendant's wrongful conduct, but denied having touched or placed her mouth on defendant's penis. However, in her subsequent testimony at trial, M.R. made such an allegation.

After defendant was arrested, he admitted that M.R. had touched his penis with her hand on one occasion, causing him to be aroused. Defendant denied that M.R. had placed her mouth on his penis. As we have already noted, the jury found defendant

guilty only of the endangerment charge, suggesting they found the proofs lacking to establish penetration.

## I.

In his first point on appeal, defendant challenges the jury charge the trial court issued on count two. Acceding to a request by the prosecutor, without objection, the court informed the jury that the State was alleging that the endangering occurred by way of either (1) the alleged sexual penetration, (2) the alleged touching, or (3) both. Defendant now contends the court erred in this respect. He argues that the court should have informed the jury, sua sponte, that it had to find defendant committed the offense of criminal "sexual contact," as a predicate to finding defendant guilty of endangering. We disagree.

In considering this newly-minted attack on the jury charge, we bear in mind several well-settled general principles. When a defendant does not object to a jury instruction at the time it is given, "there is a presumption that the charge was not error and was unlikely to prejudice the defendant's case." State v. Montalvo, 229 N.J. 300, 320 (2017) (quoting State v. Singleton, 211 N.J. 157, 182 (2012)). In such instances lacking an objection, an appellate court reviews the instruction for plain error. Ibid. (citations omitted). Plain error is confined to errors that are "'clearly capable of producing an unjust result.'" Id. at 320-21

4                                                    A-3159-14T1

(quoting R. 2:10-2).  The appellate court reviews a "defendant's claim in light of 'the totality of the entire charge, not in isolation.'"  State v. Miller, 205 N.J. 109, 127 (2011) (quoting State v. Chapland, 187 N.J. 275, 289 (2006)).

We discern no such plain error here. The predicate wrongdoing charged in count two is sexual "conduct," not the distinct crime of sexual "contact," N.J.S.A. 2C:14-3.  The definition of the offense of criminal sexual contact is "an intentional touching by the victim or [by the defendant], either directly or through clothing, of the victim's or [the defendant]'s intimate parts for the purpose of degrading or humiliating the victim or sexually arousing or sexually gratifying the [defendant]." N.J.S.A. 2C:14-1(d); see also Model Jury Charge (Criminal), "Sexual Assault — Victim Less Than 13 Actor At Least 4 Years Older Than Victim (N.J.S.A. 2C:14-2b)" (2008).

Even so, to sustain a conviction for endangering the welfare of a child, the State was not required to prove that defendant committed an act of sexual contact, as defined by the sexual assault statute.  On count two, the State was only required to prove two elements:  (1) M.R. was a child; and (2) defendant knowingly engaged in sexual conduct with M.R. that would impair debauch the morals of a child.  Model Jury Charge (Criminal),

5

"Endangering the Welfare of a Child, Sexual Conduct (Third Degree) (N.J.S.A. 2C:24-4a(1))" (2014).

The term "sexual conduct" is not defined in the statutory scheme. To be sure, sexual "conduct" that would impair or debauch the morals of a child may certainly encompass sexual "contact," as that latter term is defined by the sexual assault statute. See State v. Bryant, 419 N.J. Super. 15, 24 (App. Div. 2011) (noting that overtly sexual acts committed by a defendant upon a child constitute "sexual conduct" within the meaning of N.J.S.A. 2C:24-4(a)). However, sexual conduct may also consist, more broadly, of other acts that "tend[] to corrupt, mar, or spoil the morals of a child[.]" Model Jury Charge (Criminal), "Endangering the Welfare of a Child, Sexual Conduct (Third Degree) (N.J.S.A. 2C:24-2a(1))" (2014); see e.g., Bryant, supra, 419 N.J. Super. at 24 (observing that "because some forms of sexual conduct are by their nature more ambiguous, and involve no touching of the child, it stands to reason that the Legislature would have intended to require proof that the defendant knowingly engaged in sexual conduct").

Defendant rests his argument on a footnote in the model charge for child endangerment, which he reads to suggest that sexual conduct must necessarily involve criminal sexual contact. The statutory scheme does not support that inapt interpretation.

Although the concept of sexual conduct certainly includes criminal sexual contact, it is not limited to particular defined crimes. See Cannel, New Jersey Criminal Code Annotated, comment 2 on N.J.S.A. 2C:24-4 (2017). The endangering statute was divided into paragraphs (a)(1) (impairing and debauching) and (a)(2) (abusing and neglecting) by amendment in 2013. Cannel, New Jersey Criminal Code Annotated, comment 1 on N.J.S.A. 2C:24-4 (2017); L. 2013, c. 136. The model jury charge for endangering that was approved about a decade earlier was not divided into subsections and featured the very same footnote advising the court to specify the sexual offenses that the State is alleging in the case, "[i]f the sexual conduct is not alleged in the indictment[.]" Model Jury Charge (Criminal), "2C:24-4a Endangering the Welfare of a Child, Third Degree" (2003). Accordingly, the footnote does not place an obligation on the court to instruct the jury on the concept of sexual "contact" as that term is defined in N.J.S.A. 2C:14-1. Rather, it simply advises the court to remind the jury of whether the defendant was alleged to have impaired or debauched the morals of a child under subsection (a)(1), or, alternatively, abused or neglected the child under subsection (a)(2).

The jury in this case was provided with adequate and appropriate instructions concerning the nature of defendant's alleged sexual conduct for purposes of evaluating his guilt under

the endangerment charge in count two. The jury was also appropriately instructed on the requisite mental state required by N.J.S.A. 2C:24-4(a)(1). The trial court correctly advised the jury that, in order to be found guilty on count two, defendant must have knowingly penetrated M.R., or knowingly exposed himself to M.R. and had M.R. touch him. There was no error, let alone plain error, in these instructions to require a new trial.

## II.

Defendant's second argument, alleging prosecutorial misconduct during the trial, is likewise unavailing. He specifically argues that the assistant prosecutor's comments and use of leading questions constituted misconduct. We are unpersuaded.

Generally, the following three factors pertain when reviewing the impact of the prosecutor's alleged improper remarks: "(1) whether defense counsel made timely and proper objections to the improper remarks; (2) whether the remarks were withdrawn promptly; and (3) whether the court ordered the remarks stricken from the record and instructed the jury to disregard them." State v. Jackson, 211 N.J. 394, 409 (2012) (quoting State v. Smith, 167 N.J. 158, 182 (2001)). Here, we are satisfied that the various remarks now complained of by defendant were either not improper

at all, or, even if they were, do not amount to reversible error given the absence of a timely objection.

Defendant first argues that the assistant prosecutor inappropriately vouched for the credibility of the victim by asking his former girlfriend, who he had called as a defense witness, on cross-examination, whether M.R. would have a reason to lie about defendant touching her. Defense counsel did not object to this question. In fact, defense counsel probed the subject further on re-direct by asking the ex-girlfriend whether M.R. had a history of lying. This whole line of questioning was not withdrawn, nor was it stricken from the record.

Second, defendant complains about the assistant prosecutor's manner of addressing M.R. on re-direct examination. Defendant variously asserts that it was inappropriate for the assistant prosecutor to call M.R. "hon;" to tell M.R. "Let's focus on what this man did to you. How about that? Okay? Because you are not here because you did anything wrong. Do you understand that?;" and to read part of M.R.'s interview statement as she directed the child to the portion of the interview where M.R. had denied defendant's penis touched her body. None of these remarks deprived defendant of a fair trial.

Significantly, defense counsel did not object to any of these comments. Further, the assistant prosecutor's questioning was not

improper under the circumstances. A fair reading of the record shows that M.R. was upset after being cross-examined by defense counsel. The child sat with her head down and said she was ashamed. All of the prosecutor's comments that defendant now decries as inappropriate came after this point of the trial. The assistant prosecutor refocused the child on re-direct and assured her that she had done nothing wrong. In encouraging her to continue with her testimony, the assistant prosecutor innocuously said "go ahead, hon." Since defense counsel did not object, the comments were not withdrawn and were not stricken from the record.

We recognize the assistant prosecutor did ask M.R. a few leading questions on re-direct examination, after the child was given a copy of her statement to refresh her recollection. Again, defense counsel did not object to such questioning. Moreover, the use of leading questions was appropriate under the circumstances.

N.J.R.E. 611(c) provides that "[l]eading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony." To be sure, the general purpose of this rule is to "encourage testimony from witnesses, rather than evidence resulting from the prompting of counsel." State v. Bueso, 225 N.J. 193, 206 (2016) (quoting Biunno, Weissbard, & Zegas, Current N.J. Rules of Evidence, comment 8 on N.J.R.E. 611(c) (2015)). But child witnesses are a recognized

exception to this general policy disfavoring leading questions on direct. For example, in Bueso, the Supreme Court noted that leading questions may be used in the examination of a child witness in situations where the child is "hesitant, evasive or reluctant[.]" 225 N.J. at 207 (quoting State v. Smith, 158 N.J. 376, 390 (1999)).

Here, the assistant prosecutor appropriately used leading questions to refocus an upset child witness, to guide her through her prior statement for the purpose of refreshing her recollection, and to elicit an explanation for her seemingly contradictory statements. The use of leading questions in this discrete context was permissible to develop the child's testimony. The assistant prosecutor's questions were not egregious, nor did they manifestly deprive defendant of a fair trial.

Defendant further argues that other leading questions asked by the assistant prosecutor mandate reversal. Again, none of those questions were the subject of objection. Moreover, we are satisfied that such additional leading questions served the allowable purpose of clarifying testimony.

For example, the prosecutor permissibly confirmed with the police officer, who transported defendant to the police station for questioning, that defendant had gone there willingly. The prosecutor also permissibly questioned M.R.'s mother about her

work schedule, confirming that there were times that defendant was still home when she left in the morning. The prosecutor also permissibly asked M.R. whether she "really" wanted to talk about her assault with a doctor and a detective. In addition, the prosecutor permissibly clarified with M.R.'s doctor that the child had disclosed to her that defendant had touched her in a way that she did not like. The prosecutor did not overstep her bounds in slowly going through defendant's statement with the interviewing detective, after he already had testified to the pertinent facts on direct and cross-examination. Although the prosecutor's query to the detective on re-direct as to whether persons suspected of sexually assaulting a child are immediately forthcoming about it during an interview was arguably objectionable, no such objection was raised. We are not persuaded that the testimony could have materially altered the proofs as a whole.

In sum, we are satisfied defendant was not deprived of a fair trial because of the assistant prosecutor's manner of questioning the child or any of the other witnesses, or in advocating the State's position.

### III.

Defendant lastly argues that his trial counsel was ineffective in various respects. A fair assessment of this argument would require the development of a record beyond the

present trial transcripts that have been supplied on direct appeal. As such, we reserve this argument for a future application by defendant for post-conviction relief. Claims of ineffective assistance of counsel generally should not be raised on direct appeal; "[r]ather [a] defendant must develop a record at a hearing at which counsel can explain the reasons for his conduct and inaction and at which the trial judge can rule upon the claims including the issue of prejudice." State v. Sparano, 249 N.J. Super. 411, 419 (App. Div. 1991); see also State v. Preciose, 129 N.J. 451, 460 (1992). For example, trial counsel's lack of objection to certain leading questions may well have been motivated by a reasonable tactical assessment that the jury might have reacted negatively to repeated objections that interfered with the flow of testimony.

The balance of defendant's arguments and sub-arguments, including his claim of cumulative error, lack sufficient merit to warrant discussion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3159-14T1