# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4506-16T4

STATE OF NEW JERSEY
IN THE INTEREST OF A.J.,
a Juvenile.

_____

Submitted October 10, 2018 – Decided November 1, 2018

Before Judges Hoffman and Firko.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FJ-20-0886-18.

Joseph E. Krakora, Public Defender, attorney for appellant (Brian P. Keenan, Assistant Deputy Public Defender, of counsel and on the brief).

Michael A. Monahan, Acting Union County Prosecutor, attorney for respondent (James C. Brady, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

A.J.[1] appeals from a May 25, 2017 adjudication of delinquency for acts that, if committed by an adult, would constitute first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1), disorderly-persons lewdness, N.J.S.A. 2C:14-4(a), and three counts of endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1).[2]  We affirm.

At a dispositional hearing conducted on June 15, 2017, Judge John Hudak imposed: three years of probation to be served in a residential sexual offender specialized care program; no contact with the victims or their families; no unsupervised contact with children under the age of thirteen; and payment of requisite fines and penalties.  As part of his sentence, A.J.[3] was subject to Megan's Law, N.J.S.A. 2C:7-1 to -23.  This appeal followed.

I.

The following facts are derived from the record.  In 2016, victims J.F., born in 2007, and B.F., born in 2008, resided with their mother.  For two weeks in April of 2016, the children stayed with A.J.'s grandmother, Y.G.  During this

_____

[1]  We use initials to protect the identity of the juvenile and minor victims involved in these proceedings.  R. 1:38-3(d).

[2]  The judge found A.J. not guilty of fourth-degree sexual contact, N.J.S.A. 2C:5-1 and 2C:14-3(b).

[3]  A.J. was born on May 24, 2001.

A-4506-16T4

time, J.F. began urinating on himself at school. After Y.G. questioned him about these incidents, J.F. told her that his teacher would not allow him to use the restroom. When he began urinating on himself at her home, stopped playing, and appeared anxious, Y.G. questioned him and he reported that his cousin, A.J., "penetrated him with his penis and covered his mouth." J.F. also told Y.G. that A.J. had done the same to B.F., his brother, and J.P., his half-sister. Being unsure of what to do, Y.G. brought J.F. to a friend's house two days later for a second opinion concerning his allegations, and the friend recommended that Y.G. take him to the police station. That day, Y.G. did, in fact, take J.F. to the Elizabeth police station where officer Romulo Meneses (Meneses) conducted a forensic interview of him. J.F. told Meneses that A.J. "touched his private parts on two occasions, once in December 2015 and another time in January of 2016," and that A.J. did the same thing to J.P., B.F., and C.M., who is A.J.'s sister. The events occurred at A.J.'s house according to J.F., however, he could not recall if anyone was home during these instances. Following J.F.'s interview, Meneses referred the matter to the Union County Prosecutor's Office.

Following the interview with Meneses, and in the presence of Y.G., J.F. told B.F. that he confided in Y.G. about "everything." In response, B.F. stated, "yes Grandma, me too."

On April 13, 2016, J.F. underwent a forensic interview by Detective Brian O'Malley at the Union County Child Advocacy Center. During the interview, J.F. described that his cousin A.J., "was like, putting his balls [in] [his] butt."

Furthermore, J.F. reported that A.J. removed his pants and underwear and forced himself on J.F., describing the feeling as "hard." J.F. additionally stated that he observed A.J. penetrate B.F. and J.P in a similar manner. B.F. was interviewed by Detective Kayla Live (Live) and told her that A.J. "put his balls in his rear private parts, on his butt. And felt it move in and out," and it "hurt him." B.F. further informed Live that the sexual assault began when he was six years old and continued on a daily basis.

Both boys testified at trial. B.F. testified that A.J. pushed him to the floor, pulled down his pants and underwear, and put his "dick" inside B.F.'s "butt." This happened "many times" according to B.F.'s testimony. A.J. also showed him pornography on his phone. Further, B.F. recalled A.J. threatening him not to say anything or he would "kill" him.

Similarly, J.F. testified that A.J. forced himself upon him. On one occasion when he was seven years old, A.J. locked J.F. in a bedroom at his aunt's house, pushed him to the floor, removed his pants, and sodomized him. He

4

testified that it "hurt," tried to cry, and told A.J. to stop. J.F. was shown pornography by A.J. on his phone.

J.P. also testified that A.J. tried to pull down her pants in front of her brothers when she was eleven years old but she was able to pull them back up. When she was nine, A.J. removed her pants and underwear and "put" his "front private part" in her "front private part." She also corroborated her brothers' testimony that A.J. watched pornography with them.

A.J. sought to discredit the victims by introducing evidence pursuant to N.J.R.E. 608(b)[4] that the children and others falsely accused certain individuals of abusing them as toddlers. The judge precluded this evidence finding it did not meet the standard for admission under that rule. Although he did not conduct a N.J.R.E. 104(a) hearing, Judge Hudak analyzed the allegations and found them dissimilar and vague; inconsistent with the crimes A.J. was charged with; and the declarants' mental states were unclear because A.J.'s mother asserted the

---

[4] N.J.R.E. 608(b) provides as follows:

> The credibility of a witness in a criminal case may be attacked by evidence that the witness made a prior false accusation against any person of a crime similar to the crime with which defendant is charged if the judge preliminarily determines, by a hearing pursuant to [N.J.R.E.] 104(a), that the witness knowingly made the prior false accusation.

A-4506-16T4

claims, and she seemed motivated to change the focus of the trial. The boys' mother never reported any of the purported allegations and stated that "they lie all the time." The judge also found that J.P.'s allegation dating back to 2007 was too remote in time to be considered. J.F. had not yet been born at the time of this allegation, and B.F. was not born until the following year, thus making the timeline questionable. As duly noted by Judge Hudak, A.J.'s mother should have remembered what year it was since she was the one the allegations were made to. Lastly, the judge found that an excessive number of witnesses and time would be devoted to this issue, and any prejudice associated with these claims far outweighed any probative value as there were no investigative reports and no motivation to fabricate by the children.

On appeal, A.J. argues:

> POINT I
>
> THE MOTION JUDGE ERRED IN DENYING THE JUVENILE'S MOTION TO ADMIT PRIOR ACCUSATIONS OF THE ALLEGED VICTIMS PURSUANT TO N.J.R.E. 608([b]), WITHOUT CONDUCTING A N.J.R.E. 104 HEARING.
>
> POINT II
>
> THE TRIAL JUDGE ERRED IN FINDING THE JUVENILE GUILTY OF AGGRAVATED SEXUAL ASSAULT PURSUANT TO N.J.S.A. 2C:14-2A(l),

6

WITHOUT FINDING THAT HE ACTED KNOWINGLY, AN ESSENTIAL ELEMENT OF THE OFFENSE. (Not raised below)

POINT III

THE BLANKET BAN ON JURY TRIALS FOR JUVENILES PURSUANT TO N.J.S.A. 2A:4A-40 DEPRIVED THE JUVENILE OF THE RIGHT TO A JURY TRIAL, DUE PROCESS OF LAW, AND EQUAL PROTECTION UNDER BOTH THE UNITED STATES AND NEW JERSEY CONSTITUTIONS. (Not Raised Below)

A. As with the Kansas Decision in In the Matter of L.M., 186 P.3d 164 (Kan. 2008), Since Recent Amendments to the Juvenile Code Have Diminished the Rehabilitative Purposes and Goals of the Code, the Rationale for Nonjury Trials No Longer Applies and Consequently, the Blanket Jury Ban Pursuant to N.J.S.A. 2A:4A-40 Abridges the United States Constitution.

B. The N.J.S.A. 2A:4A-40 Blanket Jury Ban for Juveniles Violates the Plain and Unequivocal Language of the New Jersey Constitution's Guarantee of a Jury Trial.

C. Alternatively, the Harmonization of the Remaining Rehabilitative Aspects of the Juvenile Code with the Jury Trial Right Should at Least Give a Trial Court the Discretion of Providing Jury Trials for Juveniles Charged with Serious Offenses.

II.

Our standard of review in juvenile delinquency bench trials "is narrow and is limited to evaluation of whether the trial judge's findings are supported by substantial, credible evidence in the record as a whole." State in the Interest of J.P.F., 368 N.J. Super. 24, 31 (App. Div. 2004) (citing State v. Locurto, 157 N.J. 463, 471 (1999)). As an appellate court, we further owe special deference to those findings which are substantially influenced by the judge's feel of the case. State v. Elders, 192 N.J. 224, 244 (2007).

A.J.'s appellate counsel contends, in Point I, that because defendant established the five factors in State v. Guenther, 181 N.J. 129 (2004), the judge erred in precluding the prior false accusations.

We review a trial court's evidentiary determinations under an abuse of discretion standard. State v. J.D., 211 N.J. 344, 354 (2012). "We afford considerable deference to a trial court's findings based on the testimony of witnesses." State v. Buckley, 216 N.J. 249, 260 (2013). However, we owe no special deference to a trial court's interpretation of the law, and review issues of law de novo. Id. at 260-61.

N.J.R.E. 608(a) precludes evidence of specific instances of conduct, other than by a prior conviction, to prove a witness's character for truthfulness or

8

untruthfulness. Our Supreme Court created a narrow exception to this rule, in limited cases and under very strict controls, permitting a defendant to show that a victim-witness made a prior false criminal accusation for the purpose of challenging the witness's credibility. Guenther, 181 N.J. at 154. However, the false prior accusation "cannot become such a diversion that it overshadows the trial of the charges itself." Id. at 156.

In deciding whether to admit evidence of a prior false accusation, the trial court should conduct an N.J.R.E. 104 hearing and then determine by a preponderance of the evidence whether defendant has proven that the victim/witness made a prior accusation charging criminal conduct and whether that accusation was false. Id. at 157. The trial court may consider the following factors in making its determination:

> 1. whether the credibility of the victim-witness is the central issue in the case;
>
> 2. the similarity of the prior false criminal accusation to the crime charged;
>
> 3. the proximity of the prior false accusation to the allegation that is the basis of the crime charged;
>
> 4. the number of witnesses, the items of extrinsic evidence, and the amount of time required for presentation of the issue at trial; and

5.  whether the probative value of the false accusation evidence will be outweighed by undue prejudice, confusion of the issues, and waste of time.
[Ibid.]

If the court concludes that evidence of the prior false accusation is admissible, it "has the discretion to limit the number of witnesses who will testify concerning the matter at trial.  The court must ensure that testimony on the subject does not become a second trial, eclipsing the trial of the crimes charged."  Ibid.

Following Guenther, in 2007, the Legislature amended N.J.R.E. 608 to include paragraph (b), which provides as follows:

> The credibility of a witness in a criminal case may be attacked by evidence that the witness made a prior false accusation against any person of a crime similar to the crime with which defendant is charged if the judge preliminarily determines, by a hearing pursuant to Rule 104(a), that the witness knowingly made the prior false accusation.
>
> [N.J.R.E. 608(b).]

Thereafter, elaborating on its holding in Guenther, our Supreme Court explained:

> Guenther recognizes that a witness's prior false criminal allegations may be relevant to the witness's credibility.  That logic applies with equal force to false criminal allegations made soon after the primary allegation.  As defendant aptly observes, a false

accusation after an event, if closer in time, can be even more probative than a prior false allegation.

[State v. A.O., 198 N.J. 69, 93 (2009).]

We do not conclude that the failure of the judge, sitting as the trier of fact, to conduct a hearing pursuant to N.J.R.E. 104 here is so violate of N.J.R.E. 608(b) as to warrant reversal. We conclude that the elements of N.J.R.E. 608(b) were met and that A.J.'s constitutional rights were not denied. There was no abuse of discretion and we affirm substantially for the reasons expressed by Judge Hudak in his thorough oral opinion.

### III.

In Point II, counsel contends that the judge erred in adjudicating A.J. delinquent on two charges of aggravated sexual assault without making a finding as to his mental state. Judge Hudak found:

> In regard to the charges dealing with [B.F.] and [J.F] of aggravated sexual assault under 2C:14-2(a)(1), the elements of the act require an act of sexual penetration where the victim is less than [thirteen] year[s] old. Both boys were under the age of [thirteen]. In fact, at the time of trial, they were only nine and eight.
>
> Further, the [c]ourt finds the testimony of both boys is credible. Consistent with their prior statements to both detectives, their grandmother, and the police officer.
>
> The [c]ourt finds that [A.J.] did, on more than one occasion, commit an act of anal sexual penetration on

11

each of the boys, constituting sexual assault, one count
for each of [B.F.] and [J.F].

The mental culpability for aggravated sexual assault is "knowingly," which requires a perpetrator to be aware of the nature of his or her conduct. State v. G.V., 162 N.J. 252, 270 (1970); see also N.J.S.A. 2C:2-2(b)(2).

In State v. Bryant, 419 N.J. Super. 15, 23 (App. Div. 2011), this court held that it is not necessary to provide proof that a defendant "knowingly" engaged in sexual conduct, because:

> Some forms of sexual contact with a child, such as sexual intercourse, or touching the child's intimate parts, are by their nature, so obviously of a sexual nature that it would seem superfluous to require proof that the actor knew he was engaging in 'sexual [penetration]' . . . Almost by definition, one cannot engage in such conduct without a recognition that it is sexual in nature.
>
> [Bryant, 419 N.J. Super. at 24.]

Bryant discusses "sexual conduct" in relation to N.J.S.A. 2C:24-4(a) (endangering welfare of children). See Bryant, 419 N.J. Super. at 23-24. The court held that "knowingly" only needs to be applied to the first element of the crime, that defendant engaged in sexual conduct with a child, and not the second element, that defendant knowingly impaired or debauched the morals of a child.

N.J.S.A. 2C:14-2(a)(1) states "an actor is guilty of aggravated sexual

12

assault if he commits an act of sexual penetration with another person." N.J.S.A. 2C:14-2(a)(1). In his decision, Judge Hudak found that A.J. "did[,] on more than one occasion, commit an act of anal sexual penetration on each of the boys, constituting sexual assault . . . ." Applying Bryant, A.J.'s sexual penetration of B.F. and J.F. is sufficient to prove that he did so knowingly, as the conduct is sexual in nature.

Furthermore, when the intent of the accused is important and material, circumstantial evidence may be used to prove intent. State v. Rogers, 19 N.J. 218, 228 (1955). The record supports the judge's finding that A.J. pushed B.F. and J.F. to the ground and forced himself upon them on multiple occasions. A.J.'s actions during and after the abuse allowed the judge to correctly conclude A.J. "knowingly" sexually assaulted his cousins. While "knowingly" is certainly an aspect of the subject crimes, A.J.'s mental culpability was fundamentally stated in Judge Hudak's opinion insofar as he found that A.J. committed those acts.

### IV.

A.J.'s third point, asserting his right to a jury trial on federal and state constitutional grounds, is not properly before us on this appeal, because his counsel did not request a jury trial or raise the jury trial issue in the trial court.

13

See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). Generally, appellate courts will decline to consider allegations not raised before the trial court, unless it concerns substantial public interest. Nieder, 62 N.J. at 234; see also State v. Robinson, 200 N.J. 1, 20-22 (2009). We rejected the same arguments in State ex rel. A.C., 424 N.J. Super. 252 (App. Div. 2012) affirming the trial court's comprehensive opinion on the jury trial issue; State in re A.C., 426 N.J. Super. 81 (Ch. Div. 2012). We stated:

> As an intermediate appellate court, we are bound by the decisions of our Supreme Court in State in the Interest of J.W., 57 N.J. 144, 145-46 (1970), and In Re Registrant J.G., 169 N.J. 304, 338-39 (2001), and by the United States Supreme Court's decision in McKeiver v. Pennsylvania, 403 U.S. 528, 545 (1971), all of which hold that juveniles are not constitutionally entitled to a jury trial "in the juvenile court's adjudicative stage."
>
> [A.C., 424 N.J. Super at 254 (citation omitted).]

We decline to revisit the issue here.

To the extent we have not addressed A.J.'s remaining arguments, we find them without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4506-16T4